The opinion of the Court was afterwards delivered by
Parsons, C. J.
At the last term of this Court, the grand jury indicted the prisoner at the bar of the crime of murder. When the indictment was delivered to the Court, one judge only was present, and the prisoner, then in custody of the sheriff, was brought to the bar, and, upon the motion of the Attorney-General, was arraigned upon the indictment. He pleaded not guilty, and for trial put himself on the country. The plea was recorded, and, at his request, counsel were assigned him, and he was remanded. At a subsequent day of that term, three judges were present in Court to proceed upon the indictment. The prisoner being brought to the bar, the clerk was directed to arraign him, but he informed the Court that the prisoner had been arraigned, and had pleaded not *288 guilty, and put himself upon the country. No further inquiry was made, but the clerk was directed to call the jury. The prisoner made no objection to proceeding, and, after challenging a number of the jurors, a jury was empanelled, who, after a full hearing of the prisoner’s defence, found him guilty. When the prisoner was brought up to receive sentence, his counsel excepted to the verdict, because there was no issue for the jury to try, as only one judge was present when he was put to plead and his plea [*315 ] was recorded. * To support the exception, the counsel relied on the sixth section of the statute of 15th March, 1805, c. 59, which provides that all indictments for capital offences snail be heard, tried, and determined, exclusively when three or more justices are present, and they insisted that the arraignment of the prisoner was included in these words. At this term, the exception has been argued by the Attorney-General for the commonwealth, and by the prisoner’s counsel, and it remains with the Court to decide on its sufficiency.
From the nature of the question, we cannot expect to find any adjudged cases materially to assist us, as it is a question of construction of the statutes of the commonwealth erecting this Court, and regulating its proceedings. The Court was erected in 1782, with very large, and indeed plenary, jurisdiction in all cases, civil and criminal; but it could not be holden, nor could any of its jurisdiction be exercised, unless three judges were present. Various attempts have since been made by the legislature to regulate the exercise of the jurisdiction. The last attempt was by the statute just mentioned. The second section provides for the holding certain terms of the Court, at the times and places there mentioned, by three or more of the justices ; and a Court lawfully holden, pursuant to this section, might have proceeded to exercise all its jurisdiction without any further provision. The third section provides for the holding of such other terms of the Court, at the times and places there mentioned, by any one of the justices. The same observation may be made —that the Court, lawfully holden, pursuant to this section, might exercise all its jurisdiction, if the statute had contained no elaus.es of restriction. Otherwise, a Court of general jurisdiction might, when lawfully holden, be without any power whatever.
This indictment was returned into Court, and the arraignment, and trial had, at a term of the Court holden pursuant to this third section of the act. Let us, therefore, examine what restrictions were imposed, at this term, on the exercise of the general jurisdiction of the Court.
[ * 316 ] *By the sixth section of the statute, the Court at this *289 terra, unless three justices were present, was not competent to exercise any part of the jurisdiction which, by the same section, was exclusively to be exercised at the terms holden pursuant to the second section. This jurisdiction, thus exclusively to be exerciseu, comprises, among other things, the hearing, trying, and determining, all indictments for capital offences; but the inquiry by the grand jury into all offences, capital and not capital, is not within the restriction. It is therefore extremely clear that an indictment for any capital offence may be legally found, returned into Court, and filed of record, at any term of this Court when holden by one judge only. But we are all of opinion that the power of hearing, trying, and determining, an indictment for a capital offence, includes a power to arraign a prisoner, and to record his plea. It is therefore one of the powers which the Court, when holden by one judge, is restrained from exercising. Consequently, the arraignment of the prisoner, and his plea, were not coram judice. It appears that it was the intent of the statute that a prisoner, indicted capitally, should not be put on his defence unless three justices, at the least, were present. If one judge could put him to answer and record his plea, he might record his plea of guilty, in which case a prisoner would stand capitally convicted in a Court holden by one judge ; or in the assignment of counsel by one judge, it may be supposed that he may injudiciously assign such counsel as might materially affect the prisoner’s defence.
No possible inconvenience has resulted to the prisoner from the proceedings in this case. His plea, that was recorded, was the most favorable plea he could have pleaded ; and when the jury was called, he made no objection to proceed in the trial of his issue, but assented, by making his challenges. But an objection founded in a want of jurisdiction, however small, and from which no inconvenience has arisen, is not, in capital cases, taken away by any implied assent. If even quibbling is at any time justifiable, certainly a- man may quibble for his life. We do not inquire into the wisdom of the statute in this case, but, being satisfied as to its construction, we must bow to the supremacy of the law.
*Let the plea and verdict be set aside, and hereafter [ * 317 ] holden void and of no effect whatever.
Immediately after the opinion of the Court was thus delivered, the Attorney-General moved that the prisoner be arraigned upon the same indictment. The Court assigned a time for the consideration of the motion; at which time, his counsel not opposing it, he was arraigned and pleaded not guilty. He was afterwards tried and acquitted.
*290 At the first trial of Hardy, the prisoner’s counsel offered some evidence as to his general character. The Solicitor-General objected to its being received, on the ground that it had been heretofore uniformly rejected upon criminal trials in this state. The prisoner’s counsel urged that such testimony was calculated to have great weight with a jury in all doubtful cases; whether the doubt arises from the nature of tire testimony, or from the character of the witnesses for the prosecution. If such testimony is rejected, it follows, that a man’s good name will cease to be of value to him in a case in which it ought to be inestimable. It is now the practice of the English courts to admit testimony of general character to be offered by every person on trial, even for a misdemeanor. Surely it is proper that the practice here should be changed, at least in cases where the life of a citizen is in question.
The Court unanimously admitted the evidence.
Parsons, C. J.,
said that he was of opinion that a prisoner ought to be permitted to give in evidence his general character in all cases; for he did not see why it should be evidence in a capital case, and not in cases of an inferior degree. In doubtful cases, a good general character, clearly established, ought to have weight with, a jury; but it ought not to prevail against the positive testimony of credible witnesses. Whenever the defendant chooses to call witnesses to prove his general character to be good, the prosecutor may offer witnesses to disprove their testimony. [ * 318 ] But it is not competent for the prosecutor * to go into this inquiry, until the defendant has voluntarily put his character in issue, and in such case there can be no examination as to particular facts. (a)
Sewall and Parker, Justices, said that they were not prepared to say that testimony of general character should be admitted in behalf of the defendant in all criminal prosecutions ; but they were clearly of opinion that it might be admitted in capital cases, in favor of life.

 Attorney-General vs. Bowman, 2 B. & P. 582 — 2 Russell on Crimes 703, 2d ed. —1 Phill. Evid. 177, 7th Lond ed.