NEW YORK GENERAL SESSIONS. April Term, 1838. Before
*Richard Riker*, Recorder.

## THE PEOPLE *v.* RICHARD K. FROST.

The object of an arraignment of a defendant, is to establish his identity. It is not indispensable to a valid arraignment, that the defendant should be called to the bar of the court, to answer the matter charged upon him in the indictment; and that, when so brought up, he should be called upon, by name, to hold up his right hand. Any other acknowledgment of identity will answer the purpose as well.

The People *v.* Frost.

Where the prisoner actually appeared and held up his hand, and thereby, and by subsequent acts, admitted his identity, it was held, on motion in arrest of judgment, to be a valid arraignment.

Where a defendant had been duly arraigned, and by acts, if not by words, had demanded a trial, and had procured the cause to be set down for trial, and had challenged jurors, produced witnesses, and examined and cross-examined witnesses on both sides, and had summed up the case to the jury, after a verdict of guilty, a motion in arrest of judgment, on the ground that a formal plea of not guilty had not been put in, was denied.

Where, on the trial of an indictment for manslaughter in the fourth degree, which lasted several days, the jurors were allowed to separate by consent of parties, after a verdict of guilty, the judgment will not be arrested on affidavits proving expressions used by one of the jurors, both before and during the trial, tending to show bias against the defendant, where the allegations are fully met and repelled by the affidavit of the juror assailed, and where, during the whole trial, the jury appeared to be attentive, patient and exemplary.

THE defendant was indicted for manslaughter in causing the death of one Tiberius G. French. The evidence showed that the defendant was a physician of what was called the Thompsonian school, and that the death of French was caused by improper medical treatment, and particularly in the immoderate use of lobelia (known as Indian tobacco), and of the steam bath. The jury found the defendant guilty of manslaughter in the fourth degree, under that provision of the statute that declares that when death is caused "by the act, procurement or culpable negligence of another," it shall be deemed manslaughter in the fourth degree. The defendant thereupon moved in arrest of judgment, and also for a new trial, for reasons set forth in the opinion of the court, delivered by recorder Riker, presiding justice, after full argument.

*T. Phoenix* (District Attorney), for the People.

*David Paul Brown,* for the defendant.

BY THE RECORDER. The defendant in this case was indicted for manslaughter in the first degree, in feloniously causing the death of one Tiberius G. French, on the 10th day of October, 1857, by administering to him deleterious and poisonous vegetable herbs and other things and decoctions, drank therefrom,

and for ignorantly and unskillfully administering the same. One of those vegetable herbs, and perhaps the most powerful and pernicious, was upon the trial denominated before the court and jury to be *lobelia*, or, in common language, Indian tobacco. It is unnecessary here to go through the process used by the defendant in administering his medicines to Tiberius G French. After a protracted trial of ten days, in which much evidence was given on both sides, and the counsel fully heard before the court and jury, a verdict of guilty was rendered against Frost for manslaughter in the *fourth* degree. It is now moved to set aside the finding of the jury on the following grounds:

I. That the defendant was not legally arraigned.

II. That he never legally pleaded to the indictment.

III. That James E. Wood, one of the jurors, had expressed himself before, and pending the trial, if not hostile to the defendant's practice, hostile to the herbs used by him and especially that lobelia is a poison.

As to the first objection to wit: that the defendant was not legally arraigned, it is only necessary to know the legal object of an arraignment to answer that question. Sir William Blackstone says (4 *Com.*, *p.* 322): "To arraign is nothing else but to call the prisoner to the bar of the court, to answer the matter charged upon him in the indictment" (2 *Hale*, *P. C.*, 216); when brought to the bar "he is called upon by name to hold up his hand. "However," adds the learned writer, "it is not an indispensable ceremony, for, being calculated for the purpose of identifying the person, any other acknowledgment will answer the purpose as well." (4 *Black.* 323.)

In this case Frost was actually put to the bar, he actually held up his hand, and thereby, as well as by subsequent acts, admitted his identity. The objection therefore raised by his learned counsel, that he was not legally arraigned, falls to the ground.

The second objection is that he never legally pleaded to the indictment. Much reliance was placed, to sustain this objection, on the decision of Ch. J. PARSONS, and the other judges

The People *v.* Frost.

in the case of *The Commonwealth of Massachusetts* v. *William Hardy* (2 *Mass. R.*, 303, 317).

Hardy was indicted for the murder of an infant. He was arraigned and pleaded before *one* judge only. The act of 15th March, 1805, under which he was tried, "provided that all indictments for *capital offenses*, shall be heard, tried and determined *exclusively* when three or more justices were present." (2 *Mass. R.*, 315.) Hardy had never been arraigned or pleaded before any competent tribunal, for he never was either *arraigned* or *pleaded* when three or more judges were present. It is true he exercised the right of challenge and was fully defended by counsel. He was convicted. Chief Justice PARSONS took the distinction between *capital* offenses, that is offenses punished with death, and those of an inferior grade. His language is: "We are all of opinion, that the power of hearing, trying and determining an indictment *for a capital offense*, includes a power to arraign a prisoner and to record his plea" (*p.* 316). The verdict was set aside and a new trial granted, the chief justice saying, "if quibbling is at any time justifiable, *certainly a man may quibble for his life.*"

In the case, however, of *The People* v. *Ransom*, in our own State, reported in 7 *Wend. R.*, 416–429, where the prisoner was tried and convicted of murder, the court refused to set aside the verdict, though the clerk had not put into the ballot box the names of all the jurors, as he is directed by statute to do, the court saying that "whatever irregularity, therefore, there may have been in this case, it is most evident that it has not affected or prejudiced, in any manner, the rights of the prisoner, and that he is not, according to the best established principles, entitled to a new trial." (7 *Wend. R.*, 429.)

In the case now before the court, there is another view to be taken. Frost was clearly duly arraigned before a court of competent jurisdiction. It is not necessary he should plead not guilty. It is enough for him to demand a trial. (2 *R. S.*, 611, 2d ed.)

Surely this demand to be tried may be by acts, or words, or both. Frost's counsel set down the cause for trial. Frost

appeared and ratified the act of his counsel. He, with his counsel, challenged jurors, produced witnesses, examined and cross-examined them on both sides, summed up fully and at great length. Surely this is equivalent to the most formal demand to be tried.

This cause may be placed in another point of view, and which will remove all doubt. It may be treated as a *misdemeanor* or a felony. Manslaughter in the fourth degree may be punished " by imprisonment in a State prison for two years, or in a county jail not exceeding one year, or by a fine not exceeding $1,000, or by both such fine and imprisonment. (2 *R. S.*, 552, 2*d ed.*)[1] Now it is clear that this court may, in its discretion, treat the offense of Frost as a *misdemeanor* or a felony. If treated as a *misdemeanor*, the party may appear and plead by counsel, and be tried in his absence, as was done in the case of *King* v. *Th. Paine.* Mr. Erskine defended Paine, though he was absent in France.

On all these grounds the second objection must be overruled.

We come now to the third objection, to wit: that Mr. Wood, one of the jurors, had expressed himself, before and pending the trial, hostile to the defendant's practice. There is no doubt that every juror sworn to decide a cause, especially in a criminal one, should be superior to all and every unworthy bias or partiality. In this case, the jurors were allowed to separate by the consent of all parties. It is true that two witnesses have attempted to assail Mr. Wood — one by stating what he had said *before* the *trial*, one while the trial was pending, but it is equally true that Mr. Wood most fully, under his oath, meets and repels the charges. The entire conduct of Mr. Wood, and of all his fellow jurors, throughout the whole hearing of this long and arduous cause, was most scrupulously correct and discreet. They were attentive, patient and exemplary. There being no authority in the books for interference,

---

[1] But it was held in *The People* v. *Van Steenbergh* (1 *Park. Cr. R.*, 39), that such an offense is within the statutory definition of a felony.

where a juror negatives, upon his oath, the imputation of partiality (*Graham on New Trials*, 129), the court overrules that objection also, and nothing now remains for the court but to pass judgment.

The court had originally thought that public duty demanded that Frost should be subjected to imprisonment, but after due deliberation, considering that the legislature have sanctioned the practice, in the healing art, of using herbs, the growth of our own country (1 *R. S.*, 2d *ed.*, *p.* 451), and by men however uneducated and ignorant, and this being the first conviction for manslaughter, under a system deemed by the court, upon the proof before it, pernicious and dangerous to human life, we have concluded that a fine, and a moderate fine, will answer all the ends of public justice — the court reserving a severe punishment for any future crime of a similar character.

The judgment of the court is, that Frost pay a fine of $250, to stand committed until such fine be paid.

---

SUPREME COURT. Onondaga General Term, July, 1860. *Allen, Mullin* and *Morgan*, Justices.