Shaw, C. J.
A petition for the allowance of a writ of error, by a person under conviction and sentence of the law for the aggravated crime of murder, demands, and is entitled to receive, from the court to which it is legally addressed, not only the earliest attention which can be given to it, but the most deliberate, patient, and thorough consideration which a sense of judicial duty can ever require.
This application for the allowance of a writ of error was made at an adjournment of the court held by one judge, but, although within the jurisdiction of one judge, we think it was very properly postponed, to be considered by the whole court, being, it is believed, the first application of the kind under the *394 revised statutes, and involving questions of great delicacy and importance. It is made in pursuance of the Rev. Sts. c. 112, § 16, which provides, that “ No writ of error upon a judgment for a capital offence shall issue, unless allowed by one of the justices of the supreme judicial court, after notice given to the attorney-general, or other attorney for the commonwealth.”
The reason for this restraint and qualification of the right of suing out a writ of error, in a capital case, which does not exist in other criminal cases, is, we think, obvious.
Every trial of any person for an offence punishable with death has, from the earliest times, been required by the laws of this commonwealth to be held by the full court, in which a quorum must attend. Until the statute of 1820, c. 14, the entire trial, including the arraignment, was to be before a full court. By that statute, § 8, it was provided that the arraignment might be before a single judge. This was substantially reenacted by St. 1832, c. 130, § 6, and embodied in the Rev. Sts. c. 136, §§ 21, 22. So that, although the law was changed and modified as to the more formal and unimportant part of the proceeding, yet the most essential, that of conducting the trial and passing the judgment, has always been confided to the whole court.
Now, the difference between the results of a trial thus conducted, and the trials for inferior offences conducted by the court of common pleas, or by one judge in this court, is obvious. All those points of law respecting the admission and rejection of evidence, the directions to be given to the jury, and the legal and due course of procedure, which are ordinarily raised, discussed, and made the subject of exception in a trial before a single judge, and reserved for the consideration of a full court, are, in a capital trial, raised, discussed, and decided by a full court on the spot. Sometimes this is done without much discussion; but oftentimes after an elaborate argument on both sides. These decisions in matters of law, though made during the progress of a trial, have the same character, in regard to being final and conclusive, as the decisions of a full court on a bill of exceptions ordinarily have, because they are made by a full court in the first instance, and there i-s no *395 other or higher court for whose consideration they can be reserved. But there is this practical difference; that, in the capital trial, the law is ruled first, and has its proper and legal effect upon the verdict of the jury; whereas, in case of exceptions, the verdict must necessarily be taken provisionally, subject to be set aside if any of the exceptions are sustained. In cases of such magnitude, in which as early a final decision as can be had, consistently with fairness, fulness, and impartiality, is so essential to the administration of public justice, and where repeated trials would be attended with injurious consequences, it was, we think, an important consideration with the legislature to require the trial in the first instance to be before a full court, competent to a definite decision of all points and questions of law arising on the trial.
That this object has been to some degree effected, may per haps be inferred from the fact, that, since the adoption of the revised statutes providing for the allowance of a writ of error, this, it is believed, is the first instance in which such an application has been made.
In addition to the power which the accused has, on a capital trial, to take the opinion of the whole court upon every question of law arising in the course of the trial, without the intervention of a bill of exceptions, he has also a right, after verdict and before judgment, by motion in arrest of judgment to take any objection to the form and sufficiency of the indictment, or to any fault or defect apparent upon the record; and time is always allowed for that purpose. And in this particular case, although sentence was passed soon after the verdict, the time for passing that sentence was not fixed, until the court had been authoritatively informed, that it was not the desire or intention of the defendant or his counsel to make any motion in arrest of judgment.
In theory of law, therefore, in ordinary cases of capital trials, before judgment is pronounced, every question of law arising in it has been brought before the full court, — the court of final resort, — and by them decided. And, in order to show how far the theory of law in this respect is practically carried out, I may add, that, in this case, every interlocuto' y decision. *396 and every direction and instruction to the jury, in matter of law, were given with the unanimous concurrence of the four judges who sat on the trial; and, upon the deliberations had by all the judges upon this petition and the arguments thereon, and the revision of the trial to which they have given rise, no dissent to the correctness and regularity of the proceedings has been expressed by our associate, who did not personally attend at the trial.
But notwithstanding this extreme solicitude of the law to prevent all error and mistake in legal proceedings, before pronouncing the solemn sentence of death, and the precautions taken, in accordance with the plain dictates of justice and humanity, to prevent so solemn a judgment from being drawn in question for slight causes, still it is not to be overlooked, that, after judgment, some new fact may arise or be disclosed, some important and material requirement of the law may appear to have been inadvertently overlooked or disregarded, which may render it important to the great purposes of justice, that the judgment should be revised, and, if justice requires it, that it should be reversed and set aside ; for the law may be equally defeated of its just purpose, when the innocent are made to suffer, as when the guilty escape.
From this review of the provisions of law providing for the trial of capital cases, and the cautious provision made for their revision by writ of error, it is manifest that the legislature intended that this power should be applied to those cases only, where some error had occurred material to the judgment. With this view of the law, we will proceed to examine the objections made to the judgment sought to be reversed.
The first objection made to the judgment is, that the court acquired no jurisdiction of the indictment. This is a very grave and indeed a decisive objection to the judgment; and, if it can be sustained, the judgment ought certainly to be reversed.
This alleged want of jurisdiction is supposed to arise from a want of compliance with the provisions of law, in transferring the original indictment from the municipal court to this *397 court. The objection is spread out into a number of particulars enumerated. It is contended, that in case of an indictment in the municipal court, in order to give this court jurisdiction of the subject-matter, the indictment, and of the party accused, the following things must appear: —
1. The municipal court must, in the first instance, adjudicate whether an indictment shall be received.
2. If the municipal court, at the time an indictment is returned, has not acquired, it must, by its process, acquire, the custody of the party accused.
3. The municipal court must adjudicate as to the time, within certain statute limits, at which the indictment shall be entered in the supreme judicial court.
4. The municipal court must issue its precept or process to the sheriff, commanding him to serve a copy of the indictment upon the accused ; also to notify him of the order of the court, fixing the time of the entry.
5. The sheriff must serve and return this precept or process to the court which issued it.
6. The clerk of the municipal court should give notice to the chief justice of the supreme judicial court.
7. The clerk must transmit the original indictment to the supreme judicial court.
The supreme judicial court shall “ then and there have cognizance and jurisdiction.”
The officer whose duty it is to make the entry must produce a record from the municipal court, showing that the five things first named have been done.
It is contended, that the first five of these requirements are necessary to give this court jurisdiction of the indictment, and of the person of the accused. These are supposed to be required by the statute of 1844, c. 44, § 4, which we shall have occasion to consider hereafter.
The first question is, What is necessary to give the supreme judicial court jurisdiction in case of an indictment for murder or other capital offence ?
A statute may contain various provisions, some of which are conditional, and without a compliance with which tho *398 court will not have jurisdiction; and others, which are merely directory, intended to secure an orderly course of proceeding, to detain the person of the accused if already in custody, or to arrest him if at large, and to give to all others concerned the requisite information. These latter are not conditional, and a compliance with them is not necessary to give jurisdiction.
In order to understand what is the jurisdiction of this court in capital cases, it is necessary to go back to our earlier legislation.
From the adoption of the constitution to the passing of the act of 1832, the supreme judicial court, succeeding to the powers and duties of the superior court of judicature, under the province laws, has had the whole and exclusive jurisdiction of all capital offences. This court was attended by a grand jury, organized under its directions, and all indictments for capital offences were returned here and tried here. This court also had jurisdiction of many other crimes. By the act of 1832, c. 130, a different mode of distributing the criminal jurisdiction was adopted. In all other counties except Suffolk, the criminal jurisdiction had been transferred from the court of sessions to the court of common pleas, and the criminal jurisdiction- of this latter court had been greatly enlarged. In order to avoid the necessity of summoning grand juries to attend the supreme judicial court, it was provided, that no grand juries should be selected or required to attend this court except in the county of Suffolk. It was further provided, that grand juries returned to the court of common pleas should be authorized and required to perform all the duties of grand juries for the county. There were further provisions in case the grand jury should return a capital indictment; in most partictLars, like that hereafter named for Suffolk,—except that the clerk was peremptorily required to return the original indictment into the supreme judicial court, at the term next to be holden for said county.
Next in order came the revised statutes, which provide, c. 81, § 3, that the justices of the supreme judicial court shall have cognizance of all capital crimes, and of all other crimes, *399 offences, and misdemeanors, which shall be legally brought before them.
This provision is the basis, the foundation of the jurisdiction of this court in capital cases ; and the other provisions of the statutes are rather intended to direct the mode in which it shall be carried into effect.
Thus the law stood, until the act of 1844; and the same grand jury which attended the municipal court attended also the supreme judicial court, and when their deliberations resulted in a capital indictment, it was returned by them to the supreme judicial court. In all other cases, with few exceptions, the indictments were returned to the municipal court.
But, by that statute, § 4, the same system was applied substantially to the county of Suffolk, as had before been adopted in other counties ; the grand jury, though still styled the grand inquest for the body of this county, were required to appear and attend only in the municipal court; and, in case of a capital indictment, that court was made the conduit by which it was transmitted, in the simplest possible form, to the supreme judicial court. That section is as follows : —
“ K the grand jury, attending at any term of the municipal court, shall find and return to the court any indictment for any crime punishable with death, if the person accused be not in custody, process shall be forthwith issued for the arrest of the party charged with such offence, and the party so charged shall, as soon as may be, be served with a copy of the indictment by the sheriff, or his deputy, with an order of court giving notice to the accused that the indictment will be entered at the supreme judicial court, next to be holden in and for said county of Suffolk, or at any intermediate time before the next term, when said supreme judicial court shall be in session in said county, and notice of such indictment shall also be forthwith given to the chief or first justice of that court, by the clerk of said municipal court; and the said clerk shall transmit and certify the original indictment to the supreme judicial court, at the next term thereof, or at any intermediate time when said supreme judicial court shall be in session in *400 said county, where it shall be entered, and the said supreme judicial court shall then and there have full cognizance and jurisdiction thereof, and the same proceedings shall be had, as if the said indictment had been found and returned in said supreme judicial court.”
The supreme judicial court still have cognizance of all capital crimes. “ Cognizance ” is a word of the largest import, embracing all power, authority, and jurisdiction. If it can be said-to be limited at all by this statute, it is only thus far, — that the court of common pleas and the municipal court have now the authority to organize and direct grand juries and regulate their proceedings, in all cases of crimes and offences, including homicide, so far as the inquiry and indictment are concerned; but, beyond that, the jurisdiction of the supreme "udieial court is unchanged.
The supreme judicial court thus having cognizance of all capital offences, when an indictment for such an offence is found and returned by a court of competent jurisdiction, nothing further is necessary to give this court jurisdiction to try and decide it, except that it be brought to their judicial notice ; and this is done by its being certified and transmitted to them in the manner required by law.
We will now proceed to consider the specific objections to the jurisdiction of this court, arising from the supposed erroneous and defective proceedings in the municipal court.
1. It is insisted that the municipal court must, in the first instance, adjudicate whether the indictment shall be received or not, and that no such adjudication appears by their record to have been made.
In the opinion of this court, no such adjudication was necessary or could be had. The court had only the duty of receiving the indictment when returned; and the certificate that it was returned into court by the grand jury is conclusive that it was so received.
2. That if the municipal court, at the time an indictment is returned, has not acquired, it must, by its process, acquire, the custody of the party accused.
We are of opinion there is no ground for this position. It *401 is provided, that, if the party accused is not in custody, pro* cess shall be forthwith issued for his arrest. But this is a mere matter of precaution; if he is arrested, it must be to answer to the charge ; and to that he must answer in the su*> preme judicial court, because there alone the case is cognizable ; it is not necessary that the municipal court should have the custody of his person. But, if they do thus issue process, ■the indictment is still to be transmitted to the supreme judicial court; and, if the accused is in custody, he may be brought there by habeas corpus, to be arraigned and held on the indictment ; and, if he is not in custody, this court will issue a warrant to arrest him. Rev. Sts. c. 135, § 1, &c. Whether in custody under a warrant from a police court, a magistrate, from the municipal court, or on an original warrant of the supreme judicial court, he must be in the common jail of the county, and held to answer to a charge; and, this being a charge not bailable, he is necessarily in close custody; and the certainty of the return day of the process, or of the time of the session of the court to which the indictment is sent, becomes comparatively immaterial. There is but one court having cognizance of the case, one custody where the accused can be held, and a plain and easy mode of bringing in the party to answer to the charge. In a case where exceptions had been taken, but the recognizance was made returnable to the wrong term of the court, it was held that this court, by the terms of the statute, had cognizance of the cause, and having cognizance of the cause, they could issue a warrant to take the party into custody, and thus obtain jurisdiction of the person ; and upon the case thus before them, a judgment could be entered. Commonwealth v. Dow, 5 Met. 329.
3. The next requirement insisted on, under this statute, is, that the municipal court must adjudicate as to the time, within certain statute limits, at which the indictment shall be entered in the supreme judicial court.
We are unable to perceive any thing in this statute requiring any such adjudication. It is made the duty of the clerk to transmit and certify the original indictment to the supreme ludicial court, at the next term thereof, or at any intermediate *402 time when the supreme judicial court shall be in session in said county. This is a ministerial act, to be done by the clerk, which does not even require an order of the court. The statute requires the court to make an order, giving notice to the accused that the indictment will be so entered. But such an order is not essential to the jurisdiction of this court; it is merely directory to the municipal court. Suppose the indictment transmitted to this court, no such order having been made: the court, by force of the statute, has cognizance of the indictment, may bring in the party by habeas corpus, if in custody, and when brought in, if it appears that the accused has not had the notice required by the statute, it would be a good reason, if he should want further time to plead or prepare for trial, why he should have it; but it would not affect the jurisdiction.
But it is said that such an adjudication, or order, should be certain, and fix the time definitively. The answer is, that it is precisely conformable to the statute, and leaves it no more indefinite than the statute leaves it. It had been found, from some experience, that the provision requiring the indictment to be returned “ at the next term of the court, to be held,” &c., was attended with great inconvenience, when such term would not commence under many months, and yet the court actually be in session. It created much and unnecessary delay, contrary to the great considerations of public policy and justice, which assure to a party in custody a speedy trial. In the mean time, the case of Commonwealth v. Harley, 7 Met. 467, (being scire facias on' a recognizance,) had been decided, by which it was found that there was some difficulty in making appeals, &c., returnable at an adjourned term of the supreme judicial court. It presupposed a former session of the supreme judicial court, and an adjournment over for a considerable time to a day.certain, and that fixed and known. But the real and obvious purpose of the statute of 1844, making it the duty of the municipal court, by the grand jury, to find and return all indictments, was to conform to the circumstances and course of business in this county, where the supreme judicial court is in actual session nearly or quite half *403 the year; so that, if, when the indictment is returned in the municipal court, the supreme judicial court is engaged in an actual session, in progress, adjourning from day to day, it may be entered in this court at any time when it shall be in session, before the next term. This is precisely what the public exigency required; it was, we think, precisely what the statute provides; and we see no difficulty in complying with its terms. It creates no more uncertainty or doubt as to the time and place when the accused is to appear and answer, or as to the time and place at which the arraignment and trial are to take place, than if the grand jury.were, as formerly, a branch of the supreme judicial court, and returned their indictments directly there. The municipal court is employed to organize and direct the grand jury until an indictment is returned ; all else is to be done in the supreme judicial court.
4. It is insisted that the municipal court must issue its precept or process to the sheriff, commanding him to serve a copy of the indictment upon the accused, and also to notify him of the order of the court fixing the time of the entry.
The objection is, as we understand, that the copy of the indictment which went to the sheriff had no seal attached to it, and that the precept to the sheriff should have been under seal. If, by “ process ” or “ precept,” the counsel taking this exception understand a writ, or issuable process, we can perceive no clause in the statute requiring it. The direction of the statute is, that the party charged shall, as soon as may be, be served with a copy of the indictment by the sheriff. No precept or process, especially if the party is in custody, need go to the sheriff; a simple order is sufficient, like the order to the sheriff by which the party is brought into court from day to day.
But the more decisive answer to this objection applies also to the next: 5. That the sheriff must serve and return such process to the court which issued it. The answer is, that these provisions are merely directory ; and, whether complied with or not, is immaterial to the jurisdiction of this court.
6 and 7. The provision, that the clerk of the municipal court shall give notice to the chief justice of the supreme judicial court, and that the clerk shall transmit the original in *404 dictment to the supreme judicial court, are not deemed to be conditions on which alone the jurisdiction of the supreme judicial court will attach.
We are of opinion, that if any of these requirements are essential to the jurisdiction, it is the last above named, requiring the clerk to return the original indictment into this court; but, if it is so, it duly appears that this was done in the present case.
It is further insisted, rhat the officer whose duty it is to make the entry must produce a record from the municipal court, showing that the five things first above-named have been done.
I am not quite certain that the learned counsel meant to be understood, by “ the officer whose duty,” &c., to refer to the attorney-general, or public prosecutor. If so, we think it is a mistake. The attorney-general does not make the entry. The clerk of the municipal court is to transmit, &c., and then this court has, eo instanti, jurisdiction. It is to be considered, that the municipal court is a department of the court of common pleas, and that in all other counties to which the former act, serving as a model for this, in most respects, applies, the clerk of the court of common pleas and of the supreme judicial court is one and the same officer ; and that, in performing his duty of transmitting the original indictment, it does not go out of his official custody, but only from one side of his office to the other.
But when it is said that a record must be produced, &c., the answer is, that the statute requiring these things to be done is merely directory; and that neither the acts themselves, nor the production of a record of them, is necessary to the jurisdiction of this court.
It was argued, on the part of the defendant, that he was not too late in these exceptions, and could not be justly taken to have waived them.
We have not thought it necessary to consider this point, because, if the court had no jurisdiction, no consent, upon which the doctrine of estoppel and waiver are founded, could give jurisdiction. We have considered the objections, there *405 fore, so far as they may be deemed prerequisites to jurisdiction, without any reference to any supposed waiver. But when the court have full jurisdiction, then, if some provision made for the benefit of the accused has not been complied with, if he has made no objection at the time on that ground, he may with great propriety be held to have waived it; because, had he made his objection in season, the deficiency might have been supplied. But we perceive no such defect, and no occasion to inquire whether any rights have been tvaived. All the requirements of the law intended for the benefit of the accused appear to have been formally.and substantially complied with.
The case of Commonwealth v. Hardy, 2 Mass. 303, was cited to show that a court would set aside a verdict, when they had no jurisdiction. It is, undoubtedly, a good authority to that point. But, as to what might be considered sufficient to show want of jurisdiction, it is wholly different from the present It was held, in that case, under the statute of 1804, c. 105, requiring all capital trials to be holden before a full court, that the arraignment is an essential part of the trial; and that, when the arraignment was before one judge, there was no issue of which the court had jurisdiction. This is, no doubt, a correct decision, as the law then stood. When the party had pleaded guilty, before one judge, if properly arraigned, he might and must have been sentenced on such conviction ; as he must now, since that jurisdiction has been conferred on the court when held by one judge. To show the importance of an arraignment, a case may be stated which occurred in this county but a few years before the case of Hardy, where one indicted capitally for burglary, on arraignment, pleaded guilty. The court declined to receive his plea, cautioned him of the consequences, and informed him that he had a right to have a trial: he thereupon pleaded not guilty, had counsel assigned him, and, on trial, was acquitted. The case under consideration bears no resemblance to Hardy’s case.
But the court are inclined to think, that, independently of the proceedings under the statute of 1844, after the finding and return of the indictment, the jurisdiction of this court. *406 under the Rev. Sts. c. 81, § 5, would attach. By the statute of 1782, c. 9, § 2, it is provided, that “ the supreme judicial court may, by certiorari or other legal methods, cause to be brought before them as well indictments or other criminal prosecutions pending in, as the records of sentences, orders, decrees, and judgments of, any court of inferior criminal jurisdiction ; and proceed, order, and award thereon, as shall be by law provided and directed : ” and I am not aware that there is any thing in the revised statutes to diminish this power. If the municipal court or the clerk should fail to return the indictment, either at the current term, or at an adjourned term, or the next regular term of the supreme judicial court, it would be competent for this court, under its jurisdiction of all capital offences, to cause the indictment to be brought to this court by certiorari, and to order in the accused by habeas corpus, or warrant to arrest, and then proceed to trial. On the indictment being returned, it becomes complete, as a criminal accusation: its validity does not depend on being returned at the municipal court; the accused is liable to be called into the proper court to answer to it; and this court would, in the supposed case, have cognizance and jurisdiction of the indictment and of the accused, and would of course proceed to trial. Were it otherwise, this court might be ousted of its jurisdiction in cases of the highest importance. This view was not distinctly taken at the argument. The decision of the court is not dependent upon it; but, if correct, it illustrates and establishes the principles above stated.
The last error assigned in the petition is, that neither the judgment pronounced, nor the judgment rendered by the honorable court, on the indictment aforesaid, is warranted by, or in accordance with, the laws of this commonwealth ; but that each is contrary thereto.
It would be a source of deep and lasting regret, if, in a transaction of such solemnity, a serious error, or even a manifest error in point of form, however inadvertent, had been committed.
The judgment, as stated in the copy of the record annexed to the petition, is as follows:
il Whereupon, [after reciting the proceedings,] all and sin *407 guiar the premises being seen and understood, it is considered by the court, that the said John W. Webster be taken to the jail from whence he came, and thence to the place of execution, and there be hanged by the neck until he be dead.”
It has not been customary, in this commonwealth, for the court, in the case of judgment of death, on a capital conviction, to direct the particular form in which it shall be entered by the clerk; but we are assured by the clerk, that in this form he has followed a uniform series of precedents, extending back to the time immediately succeeding the adoption of the constitution.
It has been understood, as well before as since the revised statutes, that all such sentences are to be carried into effect by a warrant from the executive, at a time therein directed, in the mode and at the place fixed by law; and that it is not the duty or the province of the court to fix the time or place, or to issue any warrant to the sheriff directing the execution: though a different practice, it is believed, prevailed under the provincial government. The specific objection to the above form of sentence is, that it attempts to fix a place of execution, and does it imperfectly or illegally. By the Rev. Sts. c. 139, § 13, such sentence is to be executed within the walls of a prison of the county in which the conviction is had, or within the inclosed yard of such prison. The argument is, that by the terms “taken to the jail from whence,” &c., “and thence to the place of execution,” an execution within the walls of the jail is excluded. But we do not so understand it; the order is equivalent to the common order accompanying any sentence, viz.: “ to be taken into or kept in custody, till sentence is to be executed, and thence”—that is, from that custody in which he is to be kept till the time of execution — “ to the place of execution.” The particular word is to be taken in connection with the subject-matter, and with the well-known law and practice, which exempt the court from the duty of stating either time or place of execution in the judgment.
As this is an application for the allowance of a writ of error, and not a question on the return of a writ of error, and as this is the same term in which the judgment was given and the *408 sentence pronounced, and the irregularity, if it were one, was not in the actual form of the sentence given, but in the form of the record in which it was entered, it would be competent now for the court, if erroneously entered, to amend it according to the truth. The sentence actually pronounced was in these words: —
“ That you John W. Webster, be removed from this place, and detained in close custody in the prison of this county, and thence taken, [that is, from such custody,] at such time as the executive government of this commonwealth may by their warrant appoint, to the place of execution, and there be hung by the neck until you are dead.”
But, upon the fullest consideration, the court are all of opinion, that the judgment and sentence, in the form in which it is entered, does not, by any just construction, undertake to direct the place where the sentence shall be executed; that it leaves the executing officer to the full power and authority conferred on him by law, to execute the sentence within the walls of the prison, or in the prison-yard, at his discretion and that it is not obnoxious to the objection taken against it and is not erroneous.

Petition for the allowance of a writ of error dismissed