## RAND *v.* UNITED STATES.

*(District Court, D. Maine.* October 25, 1888.)

1. **CLAIMS AGAINST UNITED STATES—JURISDICTION OF FEDERAL COURTS—PRIOR REJECTION.**

   Act March 3, 1887, giving to United States courts jurisdiction of claims against the United States, contains a proviso "that nothing in this section shall be construed as giving either of the courts herein mentioned jurisdiction to hear and determine claims which have been heretofore rejected or reported on adversely by any court, department, or commission authorized to hear and determine the same." *Held* that, the comptroller of the treasury having charge of the adjustment of accounts against the government, a rejection of an account by him is a rejection by a department authorized to hear and determine the same, within the meaning of the proviso. Following *Bliss* v. *U. S.*, 34 Fed. Rep. 781.

2. **UNITED STATES COMMISSIONERS—FEES—DRAWING COMPLAINTS.**

   It being important to the liberty of the citizen and the due administration of justice that complaints and recognizances in criminal cases should be technically full and complete, a United States commissioner is entitled to compensation for such papers as drawn and entered by him in good faith, and in accordance with the practice of the state within which he acts, although the comptroller of the treasury may be of opinion that such papers may be comprised within a given space, and that all beyond is "unnecessary verbiage."

3. **SAME—CRIMINAL RECOGNIZANCE—OATHS TO SURETIES.**

   Compensation at the statutory rate cannot be denied to commissioners for oaths administered to sureties in criminal cases, on the ground that such oaths were unnecessary, as they cannot be held to know the sufficiency of a surety offered until he has been examined under oath.

4. **SAME—ACKNOWLEDGMENTS TO RECOGNIZANCE.**

   Commissioners, being allowed the same fees as clerks for taking acknowledgments, are entitled to a fee for each person acknowledging a recognizance, and not simply to one fee for all the acknowledgments of a recognizance.

5. **SAME—DOCKET FEES.**

   Act Aug. 4, 1886, entitled "An act making appropriation to supply deficiencies in the appropriations for the fiscal year ending June 30, 1886, and for prior years, and for other purposes," and enacting that certain sums be "appropriated to supply deficiencies in the appropriation for the fiscal year 1886, and for other objects hereinafter stated, * * * for fees of commissioners, * * * $50,000: provided, that for issuing any warrant or writ, or for other necessary service, commissioners may be paid the same compensation as is allowed to clerks for like services. but they shall not be entitled to any docket fees,"—does not take away the right of commissioners to receive docket fees, but only excepts their payment out of the sums so appropriated.

6. **SAME—PER DIEM.**

   Under Rev. St. U. S. § 847, allowing commissioners, "for hearing and deciding in criminal charges, five dollars a day for the time necessarily employed," the commissioner is entitled to a *per diem* for "hearing and deciding" a charge, though no evidence be produced or witnesses examined.

Petition for the Allowance of a Claim against the United States for fees as commissioner.

*E. M. Rand, pro se.*

*George E. Bird*, U. S. Atty., for the United States.

WEBB, J.   The petitioner, a commissioner of the circuit court in this district, prosecutes his claim against the United States for fees for services, his charges for which have been suspended or disallowed by the first comptroller of the treasury.   It is admitted that accounts for all these

services have been regularly presented, and that he has performed all the work for which he claims compensation. But it is objected that for some services his charges are excessive by reason of unnecessary length of papers, and for others he is not legally entitled to anything. A portion of the account set out in the petition was presented to and rejected by the comptroller prior to March 3, 1887, and to so much of his demand it is objected that the court has not jurisdiction. Precisely this question is decided in favor of the government in *Bliss* v. *U. S.*, 34 Fed. Rep. 781, and, while not asserting a conviction of the absolute conclusiveness of the reasoning of that case, I am not prepared to dissent from it, especially in view of the importance of harmony and uniformity of decisions in the courts of the United States. Accordingly, so much of the petitioner's claim as was passed upon and rejected by the comptroller before the approval of the act under which these proceedings are had, is disallowed. This strikes out $115.05. The remainder of the account, consisting of a large number of small charges, need not be considered in detail, as all the particulars fall into a few classes. They are for compensation in excess of the amount allowed by the comptroller on complaints and recognizances; for oaths to sureties justifying; for acknowledgment of recognizances; and for *per diem* fees, in hearing and determining on criminal charges. There is no controversy in respect to what the commissioner actually did, and if there were, the evidence is conclusive that he has charged for no service which he did not perform. Section 1014 of the Revised Statutes provides:

"For any crime or offense against the United States, the offender may, by any commissioner of a circuit court to take bail, of any state where he may be found, and agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense."

Thus the proceedings before commissioners in criminal matters are regulated by the proceedings for similar purposes under the laws of the state where they take place, and are assimilated thereto as closely as may be. *U. S.* v. *Rundlett*, 2 Curt. 41. The usual mode of process in Maine is regulated by statute. The first steps are complaint on oath and warrant for arrest. The magistrate may adjourn the examination from time to time, not more than 10 days at a time; and the accused, if the offense is bailable, may recognize with sureties for his appearance at the time of adjournment; but if the offense is not bailable, or if sufficient sureties are not offered, the accused shall be committed to jail by an order of the magistrate stating briefly the offense, and that the party is committed for further examination. The complainant and witnesses for the prosecution shall be examined on oath, in the presence of the accused. Upon its appearing that an offense has been committed, and that there is probable cause to charge the accused, if the offense is bailable, and sufficient bail is offered, it shall be taken, and the accused discharged. If the offense is not bailable, or no sufficient bail is offered, the accused shall be committed to await trial. If the accused is committed or bound over

for trial, the magistrate shall order material witnesses for the prosecution to recognize, with or without sureties, as may be considered necessary; and if they refuse to recognize as required, the witnesses may be committed to prison, and remain till discharged by law. Magistrates must certify and return to court all examinations and recognizances, and for neglect and refusal are liable to attachment for contempt. Rev. St. Me. c. 132, §§ 5, 6; c. 133, §§ 9–17, inclusive. The proceedings before this commissioner are shown to have conformed to these requirements in every instance. The objections made to his charges are not that the services were not actually performed, or that the rates of charge are improper, but that the services were, in whole or part, unnecessary. The comptroller undertakes by inflexible rule to determine the necessary length of complaints and recognizances, and refuses compensation for anything in excess of the limit he so fixes, declaring the same to be "unnecessary verbiage." It is true that commissioners have power only to examine and hold to bail or commit for appearance at court parties arrested and brought before them. But this power authorizes the imprisonment of accused persons for considerable periods to await trial. This incarceration, if the party is finally convicted and sentenced, constitutes no part of the sentence, and, in most cases, is not regarded in passing sentence. It may, and often does, exceed the time of imprisonment finally imposed as a punishment for the offense committed. Accused persons are also subjected to the burden of finding sureties, and the sureties to trouble, expense, and loss of time in appearing before the commissioner to recognize. It is by no means certain that a grand jury will present an indictment against every accused person held by the commissioner to answer, or, if they do, that conviction will follow. A due regard to personal rights seems, therefore, to require that all proceedings before the examining magistrate should be conducted with care and exactness. If the technical fullness and precision essential in an indictment is not requisite in a complaint,—a question in respect to which, under our constitutional system, there may be room for doubt,—complaints should be full enough to show clearly the particular offense charged, and contain substantial, if not formal, allegations of its essential elements, as well as the details of time, place, and persons. *State* v. *Smith*, 2 Me. 62. If the complaint, which is the basis of all the proceedings, fails to set out, even informally, an offense against the laws; if its statements may be all admitted without confessing any violation of law,—of what can it be held that there is probable cause to believe the party accused guilty, or why should he be ordered to recognize with sureties, and for want thereof to be confined in jail? It has been well said:

"There is no necessity, nor even apology, for a careless or incorrect manner of conducting any judicial process; especially one which controls the personal liberty of the subject, and requires him to defend himself against a criminal accusation. When, therefore, a magistrate institutes such a process, it is his duty to make it conformable to the requirements of technical precision."

In a recognizance less fullness and particularity may be sufficient; but it should be carefully drawn, to avoid defects which may prove fatal in a

v.36f.no.11—43

proceeding by *scire facias* or debt against principal or sureties. It should contain the names and residences of the recognizors, and the amount in which they are bound. The condition should show the proceeding in which the recognizance is taken, the particular offense for which the principal is held to answer, or, if it be the obligation of a witness, the matter with respect to which he is held to testify, and the court before which the appearance is required. The authority of the magistrate to require and take the recognizance must appear from the description of the offense charged. *State* v. *Hatch*, 59 Me. 413; Rev. St. Me. c. 133, § 25. It is not possible to determine beforehand, and for all cases, the necessary length of recognizances or other records. The petitioner, in his practice, has conformed to long-established usage in this district, and has followed the requirement and directions of the court made known years ago. There is no suggestion or reason to suspect that for the purpose of increasing his fees he has willfully expanded any papers. Every one who has had experience in framing complaints and indictments under the statutes of the United States knows the great care necessary to make them conform to the statutory provisions and the requirements of criminal pleading. Officers should rather be commended for exactness and precision, even though sometimes unnecessarily particular, than invited to loose and slovenly practice, by a denial of legal compensation. The evidence establishes that this petitioner has performed all the services for which he has charged. He is entitled to be paid for those services, and it is no justification for withholding from him that payment, even if it be the fact that another pleader might have drawn his papers more concisely.

The charges for oaths of sureties have been disallowed as unnecessary. Unless the requirement of sureties is idle and meaningless, it is important that they be responsible, and able to perform the obligation they assume. Whether they are so or not, cannot, in the greater proportion of cases, be within the personal knowledge of the magistrate. It is his duty to inform himself of their sufficiency. The oath of the individual offered as surety in respect to his residence, property, and means is an assurance, the omission of which would justly subject the commissioner to censure if the bail should be found worthless. 1 Chit. Crim. Law, 99. The rate charged for these oaths is in conformity with the statute regulation of fees, and the petitioner has the right to be paid them. Though fees for taking acknowledgments are given in the fee-bill for clerks of courts, and commissioners are for like services allowed the same compensation, it is argued that items of account under this head should be rejected, because a fee is charged for each acknowledgment, instead of one fee for each recognizance acknowledged. The statute which prescribes the fee contains no such rule. It is not in the power of one person to acknowledge an obligation so as to bind another who does not. The responsibility assumed is personal, and should be personally assented to. It is quite a different proceeding from the acknowledgment of deeds, which in this state is necessary only that the instrument may be admitted to registration, and, by statute, is sufficient if

made by one of several grantors.   As every service of this kind charged
has been performed, the compensation demanded is due.

The right to docket fees, under the decision in *Wallace's Case,* 116 U.
S. 398, 6 Sup. Ct. Rep. 408, is fully established, unless the proviso in
the deficiency bill of August 4, 1886, (24 St. 274,) defeats it.   That act
is entitled, "An act making appropriation to supply deficiencies in the
appropriations for the fiscal year ending June 30, 1886, and for prior
years, and for other purposes."   Section 1 enacts:

"That the following sums be, and the same are hereby, appropriated out of
any money in the treasury not otherwise appropriated, to supply deficiencies
in the appropriation for the fiscal year eighteen hundred and eighty-six, and
for other objects hereinafter stated, namely,   *   *   *   'judicial,'   *   *   *
'fees of commissioners.'   'For fees of commissioners, and justices of the peace
acting as commissioners, fifty thousand dollars: provided, that for issuing any
warrant or writ, and for other necessary service, commissioners may be paid
the same compensation as is allowed to clerks for like services, but they shall
not be entitled to any docket fees.' "

Whether the title of this act does or does not show that it includes and
was intended to include general legislation for other purposes than the
appropriation of money, only a violent construction can find such other
purposes in this section.   "The following sums are hereby appropriated,
etc., to supply deficiencies, and for other purposes," can only mean that
the moneys are appropriated for other purposes, in addition to the pur-
pose of making up deficiencies.   If there could be any uncertainty as to
this interpretation of the section, it would be dissipated by examination
of the objects it enumerates, every one of which is for the payment of
money.   Then what is the effect of this proviso, and why was it inserted?
"A proviso carves special exceptions only out of the enacting clause."
Per STORY, J., *U. S.* v. *Dickson,* 15 Pet. 165.

"It would be somewhat unusual to find ingrafted in an act making
special and temporary appropriation, any provision which was to have
a general and permanent application to all future appropriations.   Nor
ought such an intention on the part of the legislature to be presumed,
unless it is expressed in the most clear and positive terms, and when the
language admits of no other reasonable interpretation."   *Minis* v. *U. S.,*
Id. 443–445.

The plain intention of this statute, so far as it deals with commission-
ers' fees, was to authorize the use of a definite amount of money in the
treasury for the payment of fees that, by reason of inadequate previous
appropriations, remained unpaid.   Without the proviso, legal fees of
commissioners for every kind of service might have been paid from the
appropriation until it was exhausted.   From this application of the fund
to fees generally, the proviso, in the language of Judge STORY, "carves out
the special exception" of docket fees.   It is not difficult to suggest a rea-
son why this exception was made.   Until the supreme court, in *Wallace's
Case,* had sustained the legality of commissioners' charges for docket fees,
those charges had been uniformly held by the treasury officers improper,
and had been disallowed.   Naturally, therefore, in estimating the amount

of appropriation needed to supply deficiencies, and to meet the unpaid expenses of preceding years, no account would be taken of such charges, and a sum adequate to pay all the admitted and recognized expenses of commissioners would be made up; and, that the money might be devoted to the use for which it was estimated necessary, the proviso, upon attention being directed to the decision in *Wallace's Case*, would be inserted. Congress could not by any legislation deprive commissioners of their right to docket fees previously earned. It could refuse to grant money for the payment of those fees, and by this proviso did refuse to permit any of the fund appropriated in this act to be applied to that use,—a use for which it had not been estimated.

The Revised Statutes, § 847, allows commissioners, "for hearing and deciding in criminal charges, five dollars a day for the time necessarily employed." The difference between this commissioner and the accounting officers of the treasury is as to the interpretation to be given the words "hearing and deciding." For the United States it is contended that nothing but the production of evidence and the examination of witnesses to support the accusation and show probable cause, with, perhaps, the addition of discussion of the evidence, can be considered "hearing and deciding;" and that all charges for *per diem* allowances, when there is no hearing on the merits of the cases, should be summarily rejected. To this construction I cannot accede. In the course of proceedings before an examining magistrate "agreeably to the usual mode of process," in Maine, much time is consumed, and many duties are performed in hearing and deciding criminal charges, when no evidence on the guilt of the accused is offered or discussed, and before the case is ready for final hearing and decision on its merits.

"Acts upon which counsel ought to be heard, if desired, which necessitate some investigation and decision, such as determining whether the complaint is of a nature to constitute an offense for which the party can be criminally held, whether a continuance should be granted when required by one of the parties, and, in such case, the amount and sufficiency of bail, come within the terms, 'for hearing and deciding,' and the daily compensation should be allowed. *Harper* v. *U. S.*, 21 Ct. Cl. 56; *Com.* v. *Hardy*, 2 Mass. 303.

As such services were performed by the commissioner in this case, on the days for which he now demands compensation, his claim to be paid is well founded and is allowed.

Having thus considered all the questions presented, and finding as matter of fact that the services charged for were actually performed, and that the allowances asked are proper, I have only to order judgment for the petitioner for the sum of $330.40, being the whole amount claimed except the $115.05, which had been rejected anterior to the act giving jurisdiction in cases of this kind.