## Case No. 14,904.

### UNITED STATES v. CURTIS.

[Cited in U. S. v. Hills. Case No. 15.369. Nowhere reported; opinion not now accessible.]

## Case No. 14,905.

### UNITED STATES v. CURTIS.

[4 Mason, 232.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1826.

CRIMINAL LAW — "TRIAL" — PRACTICE — COPY OF INDICTMENT.

Under the statute of 1790, c. 9, § 28 [1 Stat. 118], which requires, that in capital cases a copy of the indictment, &c. should be delivered to the prisoner two entire days before the trial, the word "trial" means the trying the cause by the jury, and not the arraignment and pleading preparatory to such trial by the jury.

[Cited in Gordon v. Scott, Case No. 5,620; McCallon v. Waterman, Id. 8,675; Lewis v. Smythe, Id. 8.333; Meyer v. Norton. 9 Fed. 437; Logan v. U. S., 144 U. S. 263, 12 Sup. Ct. 630.]

[Cited in brief in Boston & P. R. Corp. v. Midland R. Co., 1 Gray, 355; Byers v. State (Ala.) 16 South. 718; McCall v. U. S., 1 Dak. 320, 46 N. W. 611. Cited in brief in Palmer v. State, 42 Ohio St. 600; U. S. v. Neverson. 1 Mackey. 161.]

Indictments [against Winslow Curtis. alias Sylvester Colston] for the murder of Edward Selfridge, on the high seas. on the 28th of August, 1826. Plea, not guilty.

After a verdict of guilty, Jarvis & Dunlap, for the prisoner, moved in arrest of judgment, and also for a new trial, because no copy of the indictment was furnished two days before the prisoner's arraignment and pleading, according to the statutes of 1790, c. 9, § 29. The motions were argued at length by them, and replied to by Mr. Blake, U. S. Dist. Atty.

1 [Reported by William P. Mason, Esq.]

The arguments are so fully considered by the court, that it is unnecessary to repeat them.

The counsel for the prisoner cited St. 7 Wm. III. c. 3, §§ 3, 7; St. 7 Anne, c. 31, § 10; 1 Burrows, 643; Doug. 590; Fost. Crown Law, 230; 1 Chit. Cr. Law, 329, 330, 422 (404, 405); St. 1790, c. 9, § 11; Fost. Crown Law, 1; 2 Mass. 303.

The counsel for the United States cited 4 Bl. Comm. 322, 350, and 2 Mass. 303.

Before STORY, Circuit Justice, and DAVIS. District Judge.

STORY, Circuit Justice. If the court entertained the slightest doubt upon the present question, as it is a capital case, we should take further time for deliberation. But having carefully examined all the authorities which have been cited, and deliberately considered them, I shall now proceed to state the opinion which we have formed. The point submitted is, that the prisoner was entitled of right to a copy of the indictment, two days, at least, before his arraignment thereon; that no copy was in fact furnished him, until after his arraignment; and that this omission now entitles him to have a new trial, or to have the judgment arrested. In point of fact the prisoner was arraigned, and pleaded not guilty, before the district judge, on the 29th day of November last; and at the same time, at his request, counsel were assigned to him by the court, and he selected, on that occasion, the gentlemen who so ably defended him at the trial. From various causes the trial was postponed until the 15th day of December instant; and when the prisoner was, at that time, about to be put on trial, he objected, that he had not received a copy of the indictment until the day preceding; and, at his suggestion, the trial was then postponed until the 19th day of the month, to enable him to make more thorough preparations for the trial. No suggestion was made at that time of a desire to retract his plea; nor any hint of the objection since raised, that he ought to have received a copy of the indictment before his arraignment; nor that he desired to have a new arraignment. At the trial no such objection was raised before the jury was sworn; nor indeed was the objection stated, until all the evidence was fully gone though, and the counsel, closing for the prisoner, was about to finish his argument. He then contended. that the objection was fatal to the trial, and the prisoner was entitled to a verdict of acquittal. The court immediately suggested, both to the prisoner and to his counsel, that if the prisoner, even at that time, was desirous to retrace his steps, and withdraw the cause from the jury, and to be arraigned anew, after receiving a copy for two or more days, there would be no objection on the part of the court, whatever might be their opinion of the law of the point, to allow him that indulgence. Both the prisoner and his counsel declined the offer, and put the prisoner upon his legal rights, without intending

to waive any of them in the present posture of the cause. Under these circumstances the court have a right to conclude, that no actual prejudice has been intended, or has in fact occurred to the prisoner; that the slip, if any, was wholly without motive; and that the point is one to be decided as of mere strict right. It has in fact been so argued at the bar; and certainly if well founded, and the prisoner is now entitled to the benefit of it, however formal or inconsequential the error may seem to the merits of the case, he may now demand from the court its full legal effect.

The argument proceeds upon the foundation of being fully sustained by the twenty-ninth section of the crimes act of 1790, c. 9. That section declares, "that any person who shall be accused and indicted of treason, shall have a copy of the indictment and a list of the jury and witnesses to be produced on the trial for proving the said indictment, mentioning the names and places of abode of such witnesses and jurors, delivered unto him at least three entire days before he shall be tried for the same; and in other capital offences shall have such copy of the indictment and list of the jury, two entire days at least before the trial. And that every person, so accused and indicted for any of the crimes aforesaid, shall be allowed and admitted to make his defence by counsel learned in the law; and the court, before whom such person shall be tried, or some judge thereof, shall, and they are hereby authorized and required, immediately upon his request, to assign to such person such counsel, not exceeding two, as such person shall desire," &c. This being a statute of our own government, it is doubtless the right and duty of the court to give it a sound and reasonable construction, according to the true import of its terms. But in giving such construction it is highly proper to consider what has been the construction, if any, put upon like words by other courts, and especially by the judges of England, from which country we derive our notions of the common law, and much of our jurisprudence. The question is, what is meant in this statute by the words "before he shall be tried," and "before the trial," for they are doubtless equivalent. Do they mean, that the copy shall be delivered two days before the jury is sworn to try the cause upon the issue of fact; or do they mean, before the party is arraigned on the indictment and put to plead, and before it is ascertained, whether by his plea there will be a trial by jury or not?

I will state, in the first place, what, in the opinion of the court, would be the true construction of the statute, supposing the point were, for the first time, suggested for argument; and in the next place, how far that construction is affected by any English authorities. And we are clear in opinion, that, upon the statute itself, the true meaning is, that the copy should be delivered two days before the cause is tried by the jury, and not before the party is arraigned on the indictment. The reasons, that lead us to

this conclusion, are, first, that this is the natural exposition of the intent and object of the enactment; and, secondly, that it is the legal and technical meaning of the word "trial," in the sense of the common law. It is admitted, that the legislature may use technical words in an untechnical sense; and, when from the context this is ascertained, it is the duty of the court to construe the words according to the legislative intent. It is equally its duty to follow such intent, when the legislature uses untechnical words in a technical sense. In each case, indeed, the duty of the court is the same, to carry into effect the object of the legislature, so far as it is expressed, and to give a suitable exposition of the terms, according to the fair import of the language. But where the legislature uses words, which have an appropriate sense in the common law, that sense is supposed to be the one intended by the legislature, unless the context shows, that a different sense was in fact intended. Now, in the sense of the common law, the arraignment of the prisoner constitutes no part of the trial. It is a preliminary proceeding; and until the party has pleaded, it cannot be ascertained, whether there will be any trial or not. The elementary books are full to this purpose. Mr. Justice Blackstone, in the passage cited at the bar (which is a mere transcript from Lord Hale), says, "to arraign is nothing else, but to call the prisoner to the bar of the court to answer the matter charged upon him by the indictment." 4 Bl. Comm. 322; 2 Hale, P. C. 216, c. 28. If upon the arraignment the prisoner pleads guilty, there can be no trial at all; for there remains no fact to be tried; the whole charge of the indictment is admitted, and nothing remains but to pass the proper judgment of the law upon the premises. The same may be said as to other pleas, as a pardon, auter fois convict or acquit, which if admitted, supersede any trial. Indeed, the very forms of the proceeding upon the arraignment are so complete evidence of the legal meaning of a trial, that of themselves they are decisive. When the prisoner, upon his arraignment, pleads not guilty, he is then asked, how he will be tried, and the response, in case of a trial by jury, is, that he will be tried by God and his country. 1 Chit. Cr. Law, 416, 417. "When, therefore," says Mr. Justice Blackstone, "a prisoner, on his arraignment, has pleaded not guilty, and for his trial hath put himself upon the country, which country the jury are, the sheriff of the county must return a panel of jurors," &c. 4 Bl. Comm. 350. So Lord Hale says, "After the prisoner hath pleaded and put himself upon the country, the next thing, in order of proceeding, is the trial of the offender." 2 Hale, P. C. 259, c. 34. And Sir Michael Foster, in treating on the subject, in the very paragraph preceding that cited at the bar, says, he will range the proceedings under the following heads:

"What privileges the prisoner is entitled to, and what is incumbent on him previous to the trial, and what during the trial." Fost. Crown Law, 227. See, also, Hawk. P. C. bk. 2, cc. 28, 39, 40. And under the former he places all the privileges of a copy of the indictment and list of jurors, &c. allowed by the law of England in cases of high treason. And the like distinction between the arraignment and trial was taken in Layer's Case, in 1722 (4 Bl. Comm. 322; Waite's Case, 1 Leach, Crown Cas. 33, 43; 1 Chit. Cr. Law, 415, 417), and is universally recognised. The very form, too, of calling the prisoner, when he is to be put on his trial by the jury, shows the legal sense of the terms. He is then told by the clerk, in the language of the law, that he is now set at the bar to be tried, and he is to make his challenges before the jurors are sworn. 1 Chit. Cr. Law, 532.

In short, so far as authorities, or reasoning, or forms go, there can be no legal doubt, that by the term "trial," is generally intended, in the law, the actual trial of the prisoner by the jury. The constitution of the United States, too, in the sixth amendment, which provides, that the accused shall enjoy the right to a speedy and public trial by jury, manifestly uses the term in the same sense; and indeed it pervades the general structure of our laws. There is not the slightest reason, in our judgment, for presuming that congress, in this section of the act of 1790, used the term in any different or wider sense. On the contrary, every portion of its language is entirely consistent with, and supports this construction. The object of the legislature was to enable the party to make his defence in the best and most perfect manner. Not only is a copy of the indictment, but a list of the witnesses in treason, and a list of the jurors in all capital cases, to be delivered to the prisoner. But unless he has already been arraigned, and has pleaded, how can it be supposed, that witnesses or jurors can be necessary? The witnesses can only be heard upon an issue of fact; and the jury can only try an issue of fact. Until, therefore, there has been an arraignment and plea, on which a trial may be had, it would hardly seem worthy of legislative interposition to prescribe the delivery of a list of witnesses or of jurors. If, then, the natural interpretation of the clause, so far as witnesses and jurors are concerned, is, that the list should be delivered three or two days before the time of the actual trial by the jury, the same interpretation must be applied to the copy of the indictment; for the same language, in the same connexion, is applied to both.

It has been said, that a copy of the indictment may be important, in some cases, to enable the prisoner to plead. Without question it may be so; but in such cases he would, upon the ordinary principles, be entitled to a copy for that purpose. Even in England, where no copy is provided for in any capital trials, except for treason, it is not uncommon to grant the prisoner a copy at his request, where it is shown to be important to his pleading or defence. 1 Chit. Cr. Law, 404. But it is one thing for the legislature to prescribe a thing, as a matter of right, in all cases before arraignment and pleading; and quite another thing, to grant it as a matter of fair discretion, in the course of judicial proceedings, where it may further public justice. It has been further said, that a copy of the indictment can be of no use, unless for the purpose of pleading. But this is certainly a mistake. It is of great importance to ascertain, in many cases, the precise form of the charge in order to shape the evidence, so as to meet it, or to disprove the material allegations. In indictments for treason, the overt acts must be laid in the indictment, and it is, or may be, of the very highest importance to the prisoner to know the precise form of every charge of this nature, so vital to the indictment. The same thing may be said, in many cases, of homicides, as to the manner of the death, the instrument which inflicted it, and the place where done, &c. If, in a case of murder, the means of death are not proved by the evidence, substantially, as laid in the indictment, the party is entitled to an acquittal. If, for instance, the death in the present case had been laid, in the indictment, to have been by drowning only, and not by a hatchet, and the proof had established the latter mode of death, the prisoner must have been acquitted. So where the indictment alleges the offence to be committed on the high seas, this is vital to the jurisdiction of the court in many cases; so that, if not substantially proved, the indictment fails, even though the place may be within the general admiralty jurisdiction. Some crimes by statute are only punishable when committed on the high seas, and some are punishable when committed in any other place within the admiralty jurisdiction. The distinction may often be most material to the defence at the trial. It cannot, then, be admitted for a moment, that in a capital case a copy of the indictment may not essentially aid the prisoner in his defence, both in point of merits and legal exceptions. It can rarely happen, that the want of a copy at the time of arraignment can prejudice the prisoner, because it must be presumed, that every court, solicitous for justice, will grant a copy, and delay the pleading for a reasonable time, to enable the party to avail himself of all his rights. In point of fact, in criminal cases, few defences do arise, of which the prisoner has not the full benefit under the plea of not guilty; and other pleas are of rare occurrence.

Such is a summary of the reasoning, which induces the court to declare, that if the point

were entirely new, it would feel bound to de-cide, that the true construction of the statute, whether considered upon its obvious terms, or intent, requires that the copy of the indictment should be delivered, two days at least, not before the arraignment of the prisoner, but before his trial by the jury. But in cases of this sort, the court will listen to the opinions expressed on like occasions, by other judicial tribunals, with the most anxious attention; and if, upon similar words in any statutes having similar objects, a different construction has been maintained, and acted upon, it ought to have very great weight here. Let us see, then, how the case stands upon the statutes and authorities cited at the bar. The statutes cited are the statutes of 7 Wm. III. c. 3, § 1, and 7 Anne, c. 21, § 11. respecting trials for treason. Before I proceed to comment on them, I would state, that the latter section (eleventh of 7 Anne, c. 3), on which so much reliance has been placed, is a mere supplement to, and not a total repeal of, the former. It authorizes a list of the witnesses to be delivered, which was not provided for by the statute of 7 William III.; and requires that the list of jurors should be delivered ten days before the trial, the statute of William requiring it only two days; and also a copy of the indictment ten days before the trial, the statute of William requiring it only five days. In all other respects it left the statute of William in full force and operation; and therefore the statute of Anne, being a mere supplement, has been governed by the construction previously put upon the statute of William, substituting only the enlarged period of ten days for the prior periods. This accounts at once for the reason. why the statute of Anne has never received any judicial construction. In point of fact, it did not take effect, as indeed it was upon its own terms not to take effect, until after the death of the Pretender, which did not occur until the reign of George III. Indeed, the first trial for treason upon which the statute of Anne operated, was that of Lord George Gordon, in 1781. The case is reported in Doug. 590, and upon that occasion the attorney general moved, that a list of the jurors, intended to be returned by the sheriff for the trial of the prisoner, should be delivered to the prosecutor, that a copy might be delivered to the prisoner ten days before his arraignment, that having been the construction put upon the terms, "before the trial," in the statute of William. A rule upon the sheriff was granted accordingly; and the attorney general remarked upon the peculiarity of the statutes; and said, "as there is no issue till arraignment, there can be no jury, strictly speaking, because no jury process can be awarded, until issue joined." And the reporter in a note observes, that the statute of Anne is but an extension of that of William; and thence deduces the inference (at least by implication), that the construction of both statutes on this point must be the same. The practice, then,

must be considered as regulated exclusively by the statute of William; and I will now proceed to examine the terms of that statute. Upon that examination, I think it will conclusively appear, that the construction put upon it by the English judges is perfectly correct; and that the presence of language not existing in the statute of the United States, compelled them to desert the ordinary sense of the word. "trial," in order to carry into effect an apparent and expressed object of the legislature, that the copy of the indictment should be delivered before the arraignment. It provides, that "all and every person and persons whatsoever, that shall be accused and indicted for high treason, &c., or for misprision of such treason (for other capital offences are not comprehended in the English statutes), shall have a true copy of the whole indictment, but not the names of the witnesses, delivered unto them or any of them, five days, at the least, before he or they shall be tried for the same, whereby to enable them and any of them respectively to advise with counsel thereupon, to plead and make their defence, his or their attorney &c. requiring the same, and paying the officer his reasonable fees for writing thereof, not exceeding five shillings for the copy of every such indictment." Now it is to be observed, that in this clause a copy of the indictment only (and not of the list of jurors) is provided for, and the avowed object is to enable the prisoner to advise with counsel, and to plead and make defence. According to the course of practice in England. the prisoner is obliged to plead, instanter. upon his arraignment; and therefore the very object of parliament, expressed on the face of the enactment, would be defeated, unless the copy were furnished five days before the arraignment. The courts, therefore, in construing the statute, upon its plain intendment, were driven to say, that the terms, "before he or they shall be tried," must, in this connexion, be construed to mean, before the arraignment, because in no other way could the object be effected. And this exposition is so reasonable and just, that the only surprise is, that it should ever have been made a question. Sir Michael Foster, in the passages cited at the bar (Fost. Crown Law, 228, 230), gives the reason for it, which has been already stated. See 1 East, P. C. 111, 112, 114, 115; 4 Bl. Comm. 351; Hawk. P. C. bk. 2 c. 39; 1 Chit. Cr. Law, 405. The statute proceeds, in the next sentence, to recognise the true legal difference between the arraignment and trial, for it declares, "that every such person so accused and indicted, arraigned, or tried for any such treason as aforesaid, &c. shall be received and admitted to make his and their full defence by counsel learned in the law &c." Here the arraignment and trial are distinguished, as progressive acts, and that counsel are to be permitted in each; and thus, in the former clause, the inartificial use of the words, "shall be tried," is completely established. The provision. that the prisoner

"shall have copies of the panel of the jurors, who are to try them, duly returned by the sheriff, and delivered unto them &c. two days at the least before he or they shall be tried for the same," stands in another (the seventh) section of the act. I have been curious to ascertain, whether under the act of William, it was the practice to deliver the list of jurors also before the arraignment. In Sir Michael Foster's report of the trial of the rebels in 1746, he speaks expressly, as to the delivery of the copy of the indictment before the arraignment; but says nothing as to the list of jurors. And in his subsequent discourse he alludes to the provision, as to the list of jurors, in very general terms, leaving it somewhat doubtful, whether the list of the panel was ever delivered until after the arraignment and plea, and trial assigned. Fost. Crown Law, 1, 230. But upon examination of the case of Rex v. Rookwood, 4 St. Tr. 661. 667, the very point arose, and Lord Chief Justice Holt and the other judges on that occasion held, that the list of jurors was to be given not before the arraignment, but two days before the trial by the jury. In fact, in that case the jury were not summoned until after the prisoner had been arraigned, and pleaded. The practice under the statute of Anne, from necessity, led to the delivery of all the copies before the arraignment; because it expressly requires, that the lists of the witnesses and jurors "shall be also given at the same time that the copy of the indictment is delivered to the party indicted." Doug. 591.

From this examination of the statutes of William and Anne, it is apparent, that the terms are not the same with our act of congress; and that the courts have been driven to give an exposition of the provisions different from their natural import, in consequence of explanatory phrases, which could in no other way be rationally interpreted. There is no reason to suppose, that the learned judges would have given a different exposition from that which we think the true one of the act of congress, if the language had been in all respects the same as ours. In point of authority, then, there is nothing binding on the conscience of the court, or that justifies it in abandoning the natural sense of the words used in the act of congress. But suppose the acts were the same, and required the same interpretation, and that the prisoner was entitled to a copy of the indictment and list of jurors before arraignment, the question would still remain, whether he could now avail himself of this omission. A party may have a legal right to an exception, which he cannot take in every stage of the cause. The law points out an order in its proceedings, and requires that the party should take his exceptions, and demand his privileges, at such time as general justice and convenience require; otherwise he is deemed to waive them. A party is certainly at liberty to waive any privileges introduced solely for his own benefit; and if he is satisfied with going on without

them, and sustains no prejudice thereby, there seems no ground to arrest the judgment, or grant a new trial upon this account.

The law is perfectly settled upon this subject in England under the strictest construction of the statutes of William and Anne. We have seen, that the prisoner is entitled to "a true copy of the whole indictment;" and yet, if he has received an imperfect copy, or if, being entitled to a copy of the caption of the indictment, he has received a copy without the caption, and he proceeds to plead, it is too late to take the exception. Sir Michael Foster (Fost. Crown Law, 230) says, "but if the prisoner pleadeth without a copy of the caption, as some of the assassins did, he is too late to take the objection, or indeed any other objection that turneth upon a defect in the copy; for by pleading, he admitteth that he hath had a copy sufficient for the purposes intended by the act." Now a false or imperfect copy is, in intendment of law, no true copy, and therefore, as none. But the sole object of the act being to enable the party to plead, if he is willing and ready to plead without a true copy, the law supposes his defence does not turn upon any such fact; and that he is sufficiently apprised of the whole charge, and of his own defence to it. Mr. East, in his very accurate work on Crown Law (1 East, P. C. 113), lays down the rule even more broadly. He says, "but, after pleading, it is too late to object, either to the want of a copy, or to any insufficiency in it; for that admits it to be sufficient." And he is well warranted in the statement, for in the case of Rex v. Cook, reported in 4 Hargrave, St. Tr. 738, 746, 13 Howell, St. Tr. 311, and very accurately, on this point; also, in 2 Salk. 634, it was so expressly decided by the court. In that case the prisoner, after plea, but before the jury was sworn, took an exception by his counsel, that he had not had a copy of the indictment, and therefore he could not be tried. But the court said, "By the words of the act (statute of Wm. III.) he is to demand it, and he has it to enable him to plead, and till then he is not to plead. In this case he has pleaded; therefore this benefit is waived, and the prisoner has admitted he has a copy, or did not think it for his service to require it, but was able to plead without the help of it." The same doctrine is recognized by all the other elementary writers, to which we have had access. 1 Chit. Cr. Law, 405. The same point was decided in Rookwood's Case, 4 State Tr. 661, 667. It was, in fact, decided and acted upon by the circuit court, sitting in Rhode Island, on a trial for murder, in the case of U. S. v. Cornell [Case No. 14,868].

In the case now at bar, the prisoner has been held to no strictness whatsoever. After he had pleaded, after his cause was fully before the jury, the court, in tenderness to human life, was willing to allow him to withdraw the cause from the jury; not, in-

deed, as a matter of right, but of discretion. He declined it; and if ever the waiver of a benefit was intentional, and without prejudice to the party, I am justified in saying, that the present is such a case.

It remains only to remark upon some cases cited from the Massachusetts Reports. This court is entirely satisfied, that those cases were rightly decided. The case of Com. v. Andrews, 3 Mass. 126, turned upon the well known principle, that an accessary could not be tried without his own consent, unless his principal were also on trial, or had been convicted. And if he were tried by his own express consent, no judgment could pass upon him, until the principal was subsequently convicted. The court said, that they would not presume the assent of the prisoner to the trial, much less his desire to be tried, before the principal was tried and convicted, from the mere fact, that he was put on trial. It did not appear, that he knew his rights, or that he had given any consent; and that in criminal cases an express relinquishment of a right should appear, before the party should be deprived of it. The right here attempted to be presumed to be waived, was vital to the whole prosecution; and the language of the court must be interpreted to refer to such cases. In Com. v. Hardy, 2 Mass. 303, the question was a question of jurisdiction. The statute of 1805 declared, that "all indictments, which may be found for any capital offence, shall be heard, tried, and determined &c. by three or more of the said justices" of the court. The arraignment of the prisoner for a capital offence was before one judge only. The court held the arraignment was coram non judice; and that the intent of the statute was, that a prisoner capitally indicted should not be put upon his defence, unless three justices at least were present. The case is so plainly right on the very words of the statute, "heard, tried, and determined," that it is scarcely susceptible of legal doubt. This is the substance of what I have to say, as to the opinion formed by the court. Our judgment is, that the motions be overruled.

DAVIS, District Judge, expressed his concurrence in the opinion, and added some illustrative remarks.

[See Case No. 16,682.]

NOTE, added by Judge Story. Since this opinion was delivered, I have had an opportunity to examine the case of Rex v. Rookwood, 4 State Tr. 661, at large. The very distinction insisted upon by this court was admitted and insisted upon by the counsel and court in that case. Lord Chief Justice Holt, in particular, stated, that the interpretation of the first section of the statute of William, as to the time of delivering a copy of the indictment, was altogether governed by the explanatory words, "to plead and make their defence;" and that otherwise the interpretation would be the same as that of the seventh section, as to the list of jurors, viz. that the time of trial by the jury was intended, and not the time of arraignment. When it is considered, that this case was decided the very year that the

statute of 7 Wm. III. first took effect, and by such eminent judges as Lord Chief Justice Holt and Lord Chief Justice Treby, its authority is absolutely irresistible, as to the true exposition of the statute of William. It confirms, in an unexpected manner, the view already suggested by the present judgment.