## MEYER & HAY *v.* NORTON & CALHOUN.

*(Circuit Court, D. Kentucky.* November 15, 1881.)

1. REMOVAL OF CAUSES—ACT OF 1875.

Within the meaning of the third section of the act of 1875, the petition for removal is filed in time, if filed at the first term at which, by the law and practice of that court, the cause could have been made ready and tried.

2. SAME—SAME—TRIAL.

There has been a trial, within the meaning of that act, if a judgment has been rendered in the state court sustaining a demurrer to the answer put in in the suit there, and dismissing a cross-petition with costs.

BARR, D. J. This action was commenced on the fifteenth of December, 1874, in the Louisville chancery court, by Mayer & Hay against the Louisville, Paducah & Southwestern Railroad Company, and certain subscribers to its capital stock.

The plaintiffs had judgments against said company, upon which executions had been issued and returned "no property found," and they sought to subject to the payment of their judgments certain unpaid subscriptions to the capital stock of the company. They had process of garnishment issued and served, and they also made the subscribers to the stock parties defendant. One of the defendants pleaded that Norton & Calhoun, to whom the company had made a mortgage on its property to secure three millions of dollars which had been issued in coupon bonds, had a claim on the unpaid stock subscription, and required that they be made parties. This was done by an amended petition, filed April 12, 1875, and Norton & Calhoun entered their appearance, and without filing answer moved the court to remove the cause to the United States circuit court. The petition for removal was filed the fourth of June, 1875. Previous to that time, in April, 1875, Norton & Calhoun had filed in this court a suit for the foreclosure of the mortgage executed to them on the road and its property, and when the cause was removed to this court it was consolidated with the suit already pending. This mortgage was dated March 1, 1870, and suit for its foreclosure was brought April 25, 1875. The cause remained in this court until October 2, 1877, when it was remanded to the state court; this court making the following order:

"*Meyer & Hay* v. *L., P. & S. W. R. Co.*

"This day came Eckstein Norton and Philo C. Calhoun, by H. C. Purdell, their counsel, and on their motion it is ordered that this cause be, and the same is, hereby remanded back to the Louisville chancery court, from whence it came."

Norton & Calhoun filed their answer and cross-petition on the nineteenth of October, 1877, in which they claimed the unpaid subscription to the capital stock of the L., P. & S. W. R. Co. as being included in the mortgage, and asked that the unpaid stock subscription of certain parties, who were made defendants in the cross-petition, should be decreed to them as trustees under the mortgage. Meyer & Hay filed a demurrer to this answer and cross-petition, which was sustained by the Louisville chancery court, and as they failed to

answer further their cross-petition was dismissed, with costs. They appealed to the court of appeals, where, after some delay, it was decided and the judgment of the lower court was reversed and the cause sent back for further proceeding, in conformity with an opinion then rendered. The mandate of the court of appeals was filed in the Louisville chancery court on the —— day of May, 1881, and an order entered overruling the demurrer to the answer and cross-petition of Norton & Calhoun. Meyer & Hay filed a reply to this answer and cross-petition on the —— day of May, 1881, and Norton & Calhoun filed, on the twenty-first of June, 1881, an amended answer and cross-petition, and a rejoinder to the reply. This rejoinder required a surrejoinder, and the amended answer and cross-petition a reply.

The Code allowed two weeks' time within which Meyer & Hay could file their reply and surrejoinder. These pleadings could have been filed in the clerk's office with the same effect as in court. Sections 810 and 811. After the issues are made up, 30 days are allowed within which proof may be taken. Section 818. The Louisville chancery court took its usual vacation from the ——— day of July, 1881, to September 23, 1881, as appears from an agreement of facts filed by the parties in this court. Meyer & Hay filed their petition in the Louisville chancery court September 24, 1881, asking a removal of the cause to this court, and tendered the proper bond. That court accepted the bond, and ordered the cause to be transferred so far as there was a controversy between Meyer & Hay and Norton & Calhoun. This transcript has been filed in this court, and Norton & Calhoun moved to remand the cause to the state court.

The learned counsel have urged several grounds for this motion, but it will only be necessary to notice two of them. The third section of the act of 1875 requires the petition for a removal of a cause from a state court to this court shall be "before or at the term at which said cause could be first tried, and before the trial thereof." It is insisted that by the rules and practice of the Louisville chancery court, that this cause could have been tried upon the issues as now formed, or upon issues which should have been joined before the twenty-fourth of September, 1881, and hence the petition for removal was too late.

The construction of this language in the act of 1875 is not uniform in the various circuit courts. It does not, I think, mean the term of court when the parties are first ready to try the cause, nor does it mean the term of court when the issues are first joined; but it means that term of court at which, by the law and the practice of that court, the cause *could have been first tried.* The cause may not in fact be ready for trial, but if, by the law and the practice of the court where

the cause is pending, the cause could have been made ready and tried during a term, that is the term which the act indicates as "the term at which said cause could be first tried." *Gurnee* v. *County of Brunswick*, 1 Hughes, 270; *Forrest* v. *Forrest Home*, 1 FED. REP. 459; *Blackwell* v. *Braun*, Id. 351; *Murray* v. *Holden*, 2 FED. REP. 740; *Ames* v. *Colorado Cent. R. Co.* 4 Dill. 260.

The supreme court, in *Babbitt* v. *Clark*, 103 U. S. 606, has, I think, authoritatively construed the language, in the third section of the act of 1875, as meaning that the petition for removal must be filed and motion made "at the first term in which the cause is in law triable." The court say, through the chief justice:

"The act of congress, 1875, does not provide for the removal of a cause at the first term at which a trial can be had on the issues, as finally settled by leave of court or otherwise, but at the first term at which the cause, as a cause, could be tried. * * * Under the acts of 1866 and 1867 it was sufficient to move at any time before actual trial, while under that of 1875 the election must be made at the first term in which the cause is in law triable." Page 612.

The Louisville chancery court has no terms, but is, in theory at least, always open for the trial of causes. Section 771, Code. It is the custom, and has been from the establishment of the court, for the court to take a summer vacation, commencing in July and running until the latter part of September of each year. The agreement of facts filed shows that the court took the usual vacation, which continued until September 23, 1881. If the time of the summer vacation be counted, the issues could have been made, and the time for taking proof, which is 30 days, would have expired before and in time to have placed this cause on the trial docket, which was called September 23, 1881. I am inclined to the opinion, however, that the time of vacation should not be counted in estimating the time when the issues should have been made up, because, by the practice of the Louisville chancery court, the summer vacation is intended as a vacation for the bar as well as the court. I need not, however, decide this point, as I think this objection is not available for another reason.

The language of the act of 1875 does not, in terms, apply to courts like the Louisville chancery court, which have no stated terms and are always open for the transaction of business. We should, however, apply the act to all courts if possible. We cannot apply the letter of the act, but should its spirit. In those courts that have stated terms a petition and motion for removal is in time at any

time during the term in which the cause "could be first tried, and before the trial thereof." This right exists during the term of the court without regard to the length of the term. Hence, in applying the act of 1875 to the Louisville chancery court, if there is any period of time which is regarded in the law as equivalent to a term of that court, the right to file a petition and have a removal to this court should continue during such period.

The Kentucky Code (section 772) provides that the Louisville chancery court "shall have such control over its judgments for 60 days as circuit courts have over their judgments during the term in which they are rendered." Litigants may, I think, file their petition for removal under the act of 1875, in the Louisville chancery court, before the trial of a cause, and within 60 days after the cause is first triable by the law and practice of that court. This is a reasonable rule, and one which is clearly within the spirit of the act of 1875; and, as the removal in the case under consideration is within that time, I conclude the objection urged is not well taken.

It is also insisted that the judgment of the Louisville chancery court sustaining the demurrer to Norton & Calhoun's answer and cross-petition, and dismissing them with costs, was a trial within the meaning of the act of 1875, and therefore the petition for removal was filed in this case after the first trial, and is too late. A trial is defined in the Kentucky Code to be "a judicial examination of the issues of law or of facts in an action or proceeding." Section 311.

This definition, however is not conclusive upon this court in ascertaining the meaning of the word "trial" as used by congress in the act of 1875. The learned chancellor has, notwithstanding this definition, decided in this case that the judgment of the court upon the demurrer was not a trial within the meaning of the act of 1875, and although that opinion is strong, persuasive evidence of the meaning of "trial," it is not authoritative. This court is obliged to decide for itself, on this motion, the meaning of "trial" as used in the act of 1875.

The act of July 27, 1866, used the words "trial or final hearing," and the act of March 2, 1867, used the words "final hearing or trial," and only required that the petition for removal and bond shall be filed before that time. The act of 1875 has dropped the words "final" and "hearing." "Trial," in this act, (1875,) must include a "hearing," as used in the equity practice. The trial, as expressed in this act, may or may not be in fact a "final trial," but to be a trial it must be such a proceeding as may give the court where it is the right to

determine that litigation and enter a judgment, which will, for that court and in that proceeding, be a final determination of the rights of the parties to the issue or issues, whether those issues be issues of fact or of law, or both law and fact.

The demurrer, in this case, admitted the allegations of the answer and cross-petition, and the court decided that the stock subscriptions did not pass under the mortgage, and dismissed Morton & Calhoun out of court, and gave judgment for costs against them. This was a judgment which determined their rights, and, if unreversed, would have forever barred their rights as against the parties to that suit.

Blackstone defines a trial to be "the examination of the matter of fact in issue in a cause." This is the meaning of "trial" at common law, but is too narrow a meaning to apply to "trial" as used in the act of 1875.

In *U. S.* v. *Curtis*, 4 Mason, 232, Judge Story, in a criminal case, decides that "trial," in section 29 of the act of 1790, meant where the jury was sworn, and that the trial did not commence when the prisoner was first arraigned to answer the indictment. That distinguished jurist, in that opinion, uses the language:

"The reasons that lead us to this conclusion are—*First*, that this is the natural exposition of the intent and object of the enactment; and, *secondly*, that it is the legal and technical meaning of the word 'trial' in the sense of the common law. It is admitted that the legislature may use technical words in an untechnical sense, and when from the context this is ascertained, it is the duty of the court to construe the words according to the legislative intent. It is equally its duty to follow such intent, when the legislative uses untechnical words in a technical sense. In each case, indeed, the duty of the court is the same,—to carry into effect the object of the legislature, so far as it is expressed, and to give a *suitable exposition* of the *terms according to* the *fair import of the language.*"

It would not be proper to confine the word "trial," as used in the third section of the act of 1875, to trials as understood at common law, because it applies to "any suit of a civil nature at law or in equity," and because there are many suits in which no issues of fact are made, and yet the rights of the parties are ascertained and finally determined by the court. Indeed, there are issues of fact in suits which do not determine the cause or the rights of the parties, even in the courts in which they are decided.

Judge Dillon, in his book on the Removal of Causes, § 65, says:

"It has been held, under the act of March 3, 1875, that the application for removal must be made before the trial on its merits, *or on a question which results in a final judgment or decree, commences.*"

He refers to *Lewis* v. *Smythe,* 2 Wood, 117. This authority is not quite up to the text, but Judge Wood, in his opinion, uses this very suggestive language:

"By the word 'trial,' as used in this statute, (1875,) I do not understand the argument, investigation, or decision of a question of law merely, *unless it is decisive of the trial, and the decision results in a final judgment or decree.* The decision of a court, on a demurrer, for instance, or on exceptions to the sufficiency of a plea, which is followed by amendment or new pleadings, and which does not cure the case, is not the trial meant by the statute."

If, however, the decision of the question of law does, as in this case, end the case in a final judgment, would it not, in the opinion of the learned judge, have been a trial within the meaning of the act of 1875?

We conclude that the removal in this case was not before the first trial, and the case should, therefore, be remanded.