(38 South. 466.)

No. 15,545.

### STATE v. BUTLER.

(March 27, 1905.)

MURDER—EVIDENCE—OBJECTIONS—TRIAL—
    BILLS OF EXCEPTION.

1. On a trial for murder, in which the state was relying exclusively upon circumstantial evidence, the prosecuting attorney, for the purpose of proving a circumstance connecting the accused with the crime, asked a state witness "if he was in church on the night of the murder, and, if so, to state who else was there, and if he saw Archie Butler," the accused, to which witness replied: "Joe Carr [who was not called as a witness] and myself was standing in front of the church house, and we seen some one pass there, and it looked to be Archie

Butler, and I asked him [referring to Carr] who it was, and he says, 'That's Archie,' and we called Archie by name." Whereupon counsel for defendant objected to the testimony on the grounds that it was irrelevant and "was not part of the res gestæ," which objection was overruled.

*Held,* whilst the objections might have been more to the point, they were sufficient for the purpose for which they were made, and the failure of the court to exclude the testimony objected to was reversible error.

2. The word "trial" is not used in Act No. 113, p. 162, of 1896, in the rigidly technical sense which restricts its application in criminal matters to the proceedings had after the impaneling of the jury, but it is there intended to apply to all proceedings which take place after the state and the accused announce that they are ready, or after they are ordered by the court, to proceed with the trial.

(Syllabus by the Court.)

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Clay Elliott, Judge.

Archie Butler was convicted of manslaughter, and appeals. Reversed.

Thomas Milton Bankston, William Breed Kemp, Edmund Strudwick Ogden, and Samuel Cobb Breed Brown, for appellant. Walter Guion, Atty. Gen., and Robert S. Ellis, Dist. Atty. (Brittain Birdsong Purser and Lewis Guion, of counsel), for the State.

MONROE, J. It appears from the record that Henderson Green was waylaid and assassinated in returning after dark from his church to his home, and that the defendant was prosecuted for his murder, and convicted, on circumstantial evidence, of manslaughter.

On the trial, John Jones, a state witness, was asked "if he was in church on the night of the murder, and, if so, to state who else was there, and if he saw Archie Butler," to which he replied:

"Joe Carr and myself was standing in front of the church house, and we seen some one pass there, and it looked to be Archie Butler, and I asked him who it was, and he says, 'That's Archie,' and we called Archie by name."

A bill of exceptions taken at the time contains the following recitals, to wit:

"Defendant objects to the testimony. The court overrules the objection. Defendant objects, and reserves a note as a basis for a bill of exceptions. Defendant objects on the ground that the testimony is not a part of the res gestæ; that it is irrelevant; that John Jones [witness on the stand] cannot testify as to who Joe Carr thought the person who passed the church was; that witness on the stand [John Jones] is testifying for Joe Carr; and not what he knows of his own knowledge, and that the testimony is hearsay, and, being material, should be excluded. * * * By the Court: The above is correct, in part, as will be seen by reference to the statement of facts prepared by the clerk of court. The testimony was objected to on the grounds of irrelevancy and that it was not part of the res gestæ, and these objections were overruled, and exceptions reserved thereto. The objections urged are overruled for the reasons that Henderson Green was killed while on his way home from church, and one of the points made by the prosecution was that Archie Butler, who, it was thought by some, had left the country, was seen at the church, acting as if he was looking into the church, and Henderson Green was waylaid and shot to death on the road home, not far from the church. As to the other objections which the above bill recites, the statement of facts prepared by the clerk of court shows that they were not made, and that the other exceptions recited therein were not taken. As thus corrected, the court signs the bill."

From the statement of facts referred to by the court, it appears that the objection was made on the grounds that the testimony was irrelevant and not part of the res gestæ.

The conviction of the defendant depending upon circumstantial evidence, and it being presumably a matter of the utmost importance to the success of the prosecution that it should be proved that he was seen and identified at the church, the state succeeded, through the witness John Jones, in bringing to the knowledge of the jury, not so much the knowledge or belief of the witness as to the fact, but the opinion or belief of Joe Carr, who does not appear to have been called as a witness. It will be observed that the witness says, "It looked to be Archie Butler," and ordinarily it would be inferred that he meant to convey the idea that it

looked to him to be Archie Butler; but he continues his testimony by saying, "And I asked him [meaning Joe Carr] who it was, and he says, 'That's Archie,' and we called Archie by name," from which it becomes somewhat doubtful whether the testimony amounts to anything more, in the way of identifying the defendant, than that Joe Carr said, "That's Archie." In any event, the knowledge or belief of Carr, as interpreted by the witness, was added to such knowledge or belief as the witness himself, who knew so little that he asked Carr who it was, may be considered to have given the jury the benefit of; and, considering that the charge was murder, that the deceased was waylaid and shot to death, and that the defendant was convicted of manslaughter, it may very well be that what Carr is supposed to have said turned the scale against him, and in favor of conviction. The objections, as noted by the clerk, might have been more to the point; but as what Carr said was certainly no part of the res gestæ, and as it was not legal evidence from any other point of view, we are of opinion that, such as they were, the objections should have been considered sufficient for the purpose for which they were made, and that the failure of the court to exclude the testimony was reversible error. There are several other bills of exception in the record which present regrettable issues between the trial judge and the counsel for the defendant. This, perhaps, might have been avoided if the clerk had been ordered "at the time, and without delay * * * to take down the facts" upon which the bills were predicated. Act No. 113, p. 162, of 1896. Instead of pursuing that course, it appears, from the reasons assigned by our Brother of the district court for refusing a new trial, that the case was tried on the 14th and 16th of January, 1905, and that "the next morning after the trial the judge directed the clerk to take down a statement of the facts"—certainly those relating to one of the bills.

From the following uncontroverted recitals contained in bill No. 7, however, it appears that there was still further delay, to wit:

"Defendant, three days after the rendering of the verdict for manslaughter in this case, asked for the note of testimony [exceptions], and was informed by the clerk of court that the note of testimony and exceptions had not been transcribed. Counsel for defendant insisted on having the note transcribed. Whereupon the clerk of court ordered the deputy clerk to transcribe the testimony. The deputy clerk left the courthouse and went to his home, * * * and there transcribed the testimony, and, after doing so, returned back to court with the testimony transcribed."

It is not surprising, under the circumstances, that the facts stated by the clerk do not agree in all particulars with those stated by the counsel or the judge. Thus the judge says, in his reasons for refusing a new trial, "But when the panel was complete, and before any testimony was heard, counsel for the accused asked that a statement of the facts [upon which one of the bills was predicated] be made," and he explains that it was not done at that time because the court and the counsel were unable to agree as to the facts to be stated. It does not, however, appear in the statement eventually prepared by the clerk that any request upon the subject was ever made by the defendant's counsel. Our learned and most conscientious Brother further says upon that subject:

"I was at first inclined to think that the oversight in not having the clerk of court at the time to take down a statement of the facts in regard to the court's remark to Mr. Perrilloux and to counsel in excusing John Husson [jurors who were being examined on voir dire] might necessitate granting the accused a new trial, but, after reflecting over Act No. 113, p. 162, of 1896, and State v. Riggs, 110 La. 509, 34 South. 655, I have concluded that it was not necessary on that account. The act provides how exceptions are to be taken down in cases on trial. This case, technically, was not on trial at that time. The jury had not been impanneled, nor charged with the deliverance of the accused." Citing Cooley's Limitations (6th Ed.) p. 399, to the effect that "empaneling a jury is getting ready for trial," and "until this

is done the accused is not on trial or in jeopardy."

It is quite true that by the term "trial" is generally intended, in the criminal law, the actual trial of the prisoner by the jury, and not the arraignment and pleading preparatory to such trial. U. S. v. Curtis, 4 Mason, 232, Fed. Cas. No. 14,905. But statutes are to be construed in the light of the purpose which they are intended to accomplish, and a word to which, when used in one connection, the most rigidly technical significance is to be given, may, when used in another connection, be accorded a different and broader application. Thus in a statute relative to costs the word "trial" may include a nonsuit voluntarily submitted to after evidence is put in. Allaire v. Lee, 1 Abb. Prac. 125. In a general sense, it means the investigation and decision of a matter in issue between parties before a competent tribunal. Jenks v. State, 39 Ind. 1. As commonly understood, a trial begins when both parties having announced their readiness to proceed, or the court having ordered them to proceed, the next step is taken, whether it be to read the pleadings in a civil case, or to call a juror in a criminal prosecution; and it was, we think, with reference to this construction that the word was used in Act No. 113, p. 162, of 1896, since the same reason exists for the application of such a law during the impaneling of a jury as afterwards. And though the question has not been specifically determined, this is the view by which this court has heretofore been governed. In State v. Riggs, 110 La. 509, 34 South. 655, referred to by the judge a quo, the court held that the statute should be applied in the selection of jurors; and in State v. Murray, 111 La. 688, 35 South. 814, it was held that the defendant should have availed himself of its provisions to bring up certain incidents relied on by him, which occurred "just after the state and the defendant had announced themselves ready for trial." We find it unnecessary further to notice the other bills to which we have alluded.

For the reasons assigned, it is ordered, adjudged, and decreed that the verdict and judgment appealed from be set aside and annulled, and that this cause be remanded to be tried according to law.