[No. 1815]

## THE STATE OF NEVADA, RESPONDENT, *v.* ALBERT T. JACKMAN, APPELLANT.

1. COURTS—DISTRICT COURTS—TERMS—STATUTORY PROVISIONS.

The Constitution of Nevada (art. VI, sec. 7) provides that the times of holding the supreme and district courts shall be as fixed by law. Prior to Stats. 1885, p. 60, sec. 5 (Comp. Laws, 2571), the terms of the district courts had been definitely fixed. That section provided that they should always be open for transaction of business; and section 9 provides that court should be held in each county at least once in every six months. Section 9 was repealed by Stats. 1895, p. 56 (Comp. Laws, 2573), which, however, retained the provision that court should be held in each county at least once in every six months. *Held,* that there are no terms of the district court; the courts being always open and sessions had at the convenience of the judges and as the business may require.

2. CRIMINAL LAW—TRIAL—ADJOURNMENT.

Comp. Laws, 4364, providing that while the jury are absent the court may adjourn from time to time, as to other business, but it shall be deemed to be open for every purpose connected with the cause submitted to the jury until a verdict be rendered or the jury discharged, and Comp. Laws, 4365, providing that a final adjournment of the court discharges the jury, refer to the situation existing after the jury has been impaneled and sworn and have the case under deliberation, and not where only seven jurors have been passed, subject to peremptory challenge.

3. CRIMINAL LAW—TRIAL—BEGINNING.

The trial of a criminal case does not begin, strictly speaking, until the jury is impaneled and sworn, in view of Comp. Laws, 4320, stating the order of proceedings of trial.

4. JURY—IMPANELING—CHALLENGE.

On September 25th the court ordered the issuance of a venire of 150 names, returnable on October 5th, and names to that number were regularly drawn and the venire issued. On September 30th the court vacated the order of September 25th, and directed that the names in

the venire then in process of being served be restored to the trial jury box, and that 150 names be drawn from the trial jury box, and a venire issued for those persons to attend October 7th to complete the panel in the case; seven jurors having been passed. Thereafter on the same date the 150 names were returned to the box, and the judge and clerk of court drew therefrom 150 names to complete the panel, and a venire was issued to serve the names so drawn. *Held,* that, conceding irregularity, there was not a material departure from the forms provided by statute, expressly made ground for challenge to the panel by Comp. Laws, 4288; material departures being only such as affect the substantial rights of a defendant in securing an impartial jury.

5. JURY—IMPANELMENT—VACATION OF VENIRE—DISCRETION OF COURT.

It is within the discretion of the court to vacate an order under which a venire has issued before the return day thereof, and if it is so vacated the names thereon should be returned to the jury box, under Comp. Laws, 3877, providing that when a juror drawn is not summoned, or fails to appear, or after appearing is excused, his name shall be returned to the box to be drawn again.

6. HOMICIDE—APPEAL—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In a murder case, decedent was shot twice, and accused admitted firing both shots. The first shot he contended was fired in self-defense, and the second as the result of an accidental discharge of his weapon. A witness who saw the shooting subsequently performed an autopsy, and testified, describing the course of each bullet, and that the wound from either shot was sufficient to cause death. *Held,* that, if it was error to permit the witness to give his opinion as to which was the first wound received, it was not prejudicial.

7. HOMICIDE—APPEAL—HARMLESS ERROR—INSTRUCTIONS.

In a murder case, a charge that it is only necessary that the act of unlawful killing be preceded by a concurrence of the will, deliberation, and premeditation on the part of the slayer, if erroneous for omitting the words "and the result of," after "preceded by," it was not prejudicial, where accused was convicted of second-degree murder.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Esmeralda County; *F. P. Langan,* Judge.

Albert T. Jackman was convicted of murder, and appeals. **Affirmed.**

The facts sufficiently appear in the opinion. See, also, 29 Nev. 403, and page 106 of this volume.

*Thompson, Morehouse & Thompson,* for Appellant:

I. The court erred in proceeding with the trial and overruling defendant's objection to the jurisdiction of the court, because the judge of the court, Hon. Frank P. Langan, left

the County of Esmeralda, and opened and held court in the County of Ormsby. This ended the term of the Esmeralda County district court, by operation of law. While the First Judicial District contains the Counties of Esmeralda, Ormsby, Lyon, Douglas and Storey, yet each county is a separate district court, and when the judge opened court in Ormsby, the court ended here, because it is an impossibility that the court could be open and the same judge preside in both courts at the same time. (*Ex Parte Gardner*, 22 Nev. 280; Const. Nev. art. II, sec. 7; Ency. Pl. & Pr. 632; *Bates* v. *Gage*, 40 Cal. 183; *In Re Patzwald*, 50 Pac. 139; *Barrett* v. *State*, 1 Wis. 175.)

II.   When the court left Esmeralda County the term ended, and, having ended, there is no term until the court has made the order and notices have been given in pursuance to Rule 3 of the district court, because the law nowhere by statute fixes the terms of the district court except by Comp. Laws, 2537, where it says "and court shall be held in each county at least once in every six months." But this section does not fix the beginning or ending of any term. All through the statute the word "term" is used.

III.   While Judge Langan is away holding court in Ormsby County the sheriff has seven jurors, passed in impanelment, subject to peremptory challenge, in his custody. Suppose some one attempts to embrace them. Could he be punished for contempt? No order could be made by Judge Langan while in Ormsby County, says *Ex Parte Gardner*, 22 Nev. 280, and no order could be made in Esmeralda County, because Judge Langan is not in Esmeralda County, and, as a court cannot exist without a judge, there is no court in Esmeralda County, and therefore no contempt of court. Suppose the sheriff chooses to release the seven jurors, what power has the court in the premises to do anything? Absolutely none, because there is no court in Esmeralda County. But, says that court, "The functions of the court cannot be suspended and the functions of the jury continue." But the functions of the court in our case were suspended, and an attempt was made to continue the functions of the jury. After citing many things surrounding a jury, and the powers of the court, that court further says: "All these privileges and safeguards are in a

great measure for the protection of the rights of the defendant, and nothing but the existence and presence of the court during every part of the proceedings of his trial can insure them to him." (*Delafield* v. *Lewis Mercer Const. Co.*, 115 N. C. 21; *Boyd* v. *Yeague*, 111 N. C. 246; *Foley* v. *Blank*, 92 N. C. 476; *Branch* v. *Walker*, 92 N. C. 87.)

IV. The court erred in giving his fourth instruction, because he says: "It is only necessary that the act of unlawful killing be preceded by a concurrence of the will, deliberation, and premeditation on the part of the slayer." This instruction omits the qualifying words, but should read: "It is only necessary that the act of killing be preceded by, and the result of a concurrence of will," etc. This instruction was squarely passed upon by the Supreme Court of California in *People* v. *Maughs*, 149 Cal. 253, 86 Pac. 187, and was held to be reversible error.

*R. C. Stoddard*, Attorney-General, and *L. B. Fowler*, Deputy Attorney-General, for Respondent:

I. In 1864 the legislature, in a general act relating to courts generally, created nine judicial districts and provided that the terms of holding court shall be as provided by law in each district, and that each term shall continue so long as the business may require or until the day fixed for the commencement of another term in the same district, and may be adjourned from time to time, in the discretion of the court (Stats. 1864, p. 110). In 1869 the legislature changed the number of districts and fixed the terms of court in each judicial district (Stats. 1869, p. 133). During the intervening period from 1869 to 1885 each succeeding legislature changed the number of districts and refixed the terms of court therein. In 1885 the legislature changed the law so as to establish but one judicial district with three district judges (Stats. 1885, p. 60). Section 5 of this act provided that "the district court shall always be open for the transaction of business." Section 9 of said act also provided that the judges should select one of their number as presiding judge, who should have power to direct the judges to hold court in the several counties of the district "as the public business may require," and that

court shall be held in each county "at least once in every six months and as often and as long as the business of the county requires." In 1895 section 9, above referred to, was expressly repealed, and what is now section 2573 of Compiled Laws was enacted. (*State* v. *Atherton*, 19 Nev. 333.)

By the Court, NORCROSS, C. J.:

Appellant upon a second trial was convicted in the First Judicial District Court in and for Esmeralda County of murder in the second degree and sentenced to life imprisonment. From the judgment, and from an order denying his motion for a new trial, this appeal is taken. This case was heretofore before this court upon an appeal from a judgment of murder in the first degree; the case being reported in 29 Nev. 403.

The case was regularly set down for trial on the 28th day of September, 1908, and continued by order of court until the following day. The court having denied the motion of both parties for a further continuance, the selection of a jury to try the cause was undertaken. At the close of the day the jury list in the court-room trial jury box was exhausted, seven jurors having in the meantime been passed, subject to peremptory challenge. Thereupon the court continued the case until the 7th day of October, 1908, at the hour of 2 o'clock p. m. Upon the arrival of the time specified in the last aforesaid adjournment, an additional venire of 150 names having been returned by the sheriff, the case was called for further proceeding. At this point counsel for defendant objected to proceeding with the case upon the ground that the court was then without jurisdiction to proceed with the trial, for the reason that the trial judge had, during the time intervening between the adjournment on the 29th day of September and the 7th day of October, left the County of Esmeralda, and gone to another county in his district, to wit, Ormsby County, and had opened court therein and heard and determined a number of judicial proceedings pending therein, which act upon the part of the judge it was contended, and is now contended, operated to end the term of court theretofore held in Esmeralda County and to discharge the seven jurymen passed

as aforesaid and all jurymen appearing upon the venire made returnable upon that date; that the court was without jurisdiction to proceed with the trial until another term of court had regularly been convened in the manner required by law.

It is not disputed that the trial judge did the act alleged; that he in the meantime held a session of the First Judicial District Court in and for the County of Ormsby, which last-named county, together with Esmeralda County and three others, then constituted the First Judicial District, presided over by one judge. Section 7 of article VI of the Constitution of the state provides: "The times of holding the supreme court and the district courts shall be as fixed by law. The terms of the supreme court shall be held at the seat of government, and the terms of the district courts shall be held at the county-seats of their respective counties. * * *" While the act of the legislature of January 26, 1865, entitled "An act concerning the courts of justice of this state, and judicial officers" (Comp. Laws, 2508–2565) prescribed four terms in each year for the supreme court, which provision is still in force, no similar provision as to district courts now exists. Prior to an act of the legislature passed in 1885 (Stats. 1885, p. 60, c. 56, sec. 5; Comp. Laws, 2571) the terms of the district courts had been definitely fixed. The act last above mentioned provided that "the district court shall always be open for the transaction of business." By an act entitled "An act concerning the district courts of the State of Nevada and the judges thereof," approved March 13, 1895 (Stats. 1895, p. 56, c. 59; Comp. Laws, 2573), it is provided, among other things: "If the public business requires, each judge may try causes and transact judicial business in the same county at the same time. Each judge shall have power to transact business which may be done in chambers at any point within the state, and court shall be held in each county at least once in every six months, and as often and as long as the business of the county requires. All of this section is subject to the provision that each judge may direct and control the business in his own district, and shall see that it is properly performed."

In the case of *State* v. *Atherton*, 19 Nev. 332, 347, this court,

refering to the provisions of section 9 of the act of 1885, *supra*, said: "The provision in section 9 that the courts shall be held in each county at least once in every six months is a compliance with section 7, art. VI, of the Constitution, which declares that 'the times of holding the * * * district courts shall be as fixed by law.' The Constitution does not require the law to specify when the terms of court shall be held. Its language is that 'the terms of the district courts shall be held at the county-seats of their respective counties.' * * *" The said section 9, *supra*, was repealed by the said act of 1895, *supra;* but the provision requiring that "court shall be held in each county at least once in every six months" was retained in the latter statute.

In the case of *Horton v. New Pass Co.*, 21 Nev. 184, 194, this court said: "Under the system prevailing in this state, there are no terms of the district court. The courts are always open, and the sessions are held at the convenience of the judges, and as the business may require." Under the statutes of this state now in force, counsel for appellant's contention that terms of the district court exist, and that the fact of the trial judge going into another county in his district, where he opened and held a session of court therein, operated as an adjournment of the term in Esmeralda County, so as to leave the court without jurisdiction then to proceed with the case, we think, is without merit.

If a jury had been impaneled and sworn to try the case, and especially if the trial had so far advanced that the case was submitted to the jury for its deliberation, a different situation might be presented, if the judge should leave the county where the trial was in progress, and go into another county and open and hold court; but whether or not this would amount to a mistrial is not necessary now to consider. This is the situation presented in the leading case relied upon by counsel for appellant—*In Re Patzwald*, 5 Okl. 789, 50 Pac. 139.

Section 399 of our criminal practice act (Comp. Laws, 4364) provides: "While the jury are absent, the court may adjourn from time to time, as to other business, but it shall nevertheless be deemed to be open for every purpose connected with the cause submitted to the jury, until a verdict

be rendered or the jury discharged." Section 400 of the same act (Comp. Laws, 4365) provides: "A final adjournment of the court discharges the jury." These sections refer to the situation existing after the jury has been impaneled and sworn and have the case under deliberation.

At the time the trial judge left Esmeralda County, and went to Ormsby County, and held a session of court, the trial of defendant had not in fact begun. Strictly speaking, the trial does not begin until the jury is impaneled and sworn. (Comp. Laws, 4320; *United States* v. *Curtis*, 4 Mason, 232, 25 Fed. Cas. 726; *Commonwealth* v. *Soderquest*, 183 Mass. 199, 66 N. E. 801; *Hunnel* v. *State*, 86 Ind. 431; *Alexander* v. *Commonwealth*, 105 Pa. 1; 8 Words and Phrases 7099, *et seq.*, and authorities cited.)

In *United States* v. *Curtis, supra*, Justice Story, after considering the question at some length, concludes: "In short, so far as authorities, or reasoning, or forms go, there can be no legal doubt that by the term 'trial' is generally intended, in the law, the actual trial of the prisoner by the jury. The Constitution of the United States, too, in the sixth amendment, which provides that the accused shall enjoy the right to a speedy and public trial by jury, manifestly uses the term in the same sense; and, indeed, it pervades the general structure of our laws."

In the case of *Alexander* v. *Commonwealth, supra*, the court said: "After the names of forty-nine jurors had been drawn from the box, which had contained sixty, and eight jurors had been separately sworn, it appeared that eleven of the paper pellets had been clandestinely removed, whereupon the court directed the clerk to prepare eleven pellets in place of those which had been removed, and again put all the pellets in the box, and further ordered that the drawing of the jury be commenced *de novo*. The defendant complains that the tendency of that order was to put him twice in jeopardy, and that the court had no power to make it. He was not in jeopardy at the time of making the order. The trial begins when the jury is charged with the defendant, and that is at the moment a full jury is impaneled and sworn. He is not in jeopardy before. Up to that point the court may post-

pone the trial as lawfully at one stage of the proceedings as another. A man is not in peril from the verdict of a jury till the full number are qualified to hearken unto the evidence and make deliverance."

2. Upon the resumption of the case upon the 7th day of October, 1908, counsel for defendant interposed a challenge to the panel of jurors. Section 4288 of the Compiled Laws provides: "A challenge to the panel can only be founded on a material departure from the forms prescribed by statute in respect to the drawing and return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn." The facts upon which the challenge was based were the following: Upon the 25th day of September, 1908, the court made an order for the issuance of a venire of 150 names, returnable before the court on October 5th following, and names to that number were regularly drawn from the jury box and the venire issued. On the 30th day of September, 1908, the court of its own motion made an order vacating and setting aside the said order of September 25th, and directed that such names as were in said venire, then in process of being served, be restored to the trial jury box from whence they were drawn, and the further order made that 150 names be drawn from the trial jury box, and a venire issued to the sheriff commanding him to summons the persons whose names were so drawn to attend court on October 7th, for the purpose and the only purpose of completing the panel in this case. Thereafter, and on said date, the 150 names theretofore drawn and placed upon the venire then in the hands of the sheriff were returned to the trial jury box, and the judge and the clerk of the court proceeded to draw from said trial jury box 150 names to complete the panel in the cause. Thereupon a venire was issued to the sheriff to serve the names so drawn.

Conceding, for the purposes of this case, that there may have been some irregularity in the manner in which the previous venire was discharged and the second drawn, yet we do not think that it can properly be said that there was "a material departure from the forms provided by statute." It is not claimed, nor could it properly be said, we think, that

the defendant did not have the benefit of a fair and impartial jury, nor that the defendant was deprived of any substantial right in the manner in which the jury was drawn. "Material departures are only such as affect the substantial rights of a defendant in securing an impartial jury." (*People* v. *Sowell*, 145 Cal. 296, 78 Pac. 717; *State* v *Johnny*, 29 Nev. 203; 24 Cyc. 255.)

Comp. Laws, 3877, provides: "When a juror drawn is not summoned, or fails to appear, or after appearing is excused by the judge from serving, his name shall be returned to the box to be drawn again." It would seem, from a reading of the foregoing section, that the legislature intended that where any one whose name was regularly in the jury box, and whose name was drawn and placed upon a venire, and who did not actually appear and perform jury service, or stand ready to perform such service, his name should be returned to the jury box, subject to future drawings. While it is claimed that some were summoned under the first venire, it is not contended that any persons whose names were upon the first venire ever appeared thereunder. It is true that the time for appearing had not arrived when the order was made vacating the prior order; but, when the appearance was made unnecessary by the order of court, we cannot see any substantial reason why that situation should make any difference.

We think it a matter in the discretion of the trial court to vacate an order under which a venire had issued and before the return day thereof, and, if it is so vacated, that the names thereon ought to be returned to the jury box, under the plain intent of the statute. A large public expense is attached to the summoning and appearance of a venire containing the number of names of the one in question. If a case is not ready to proceed upon the day set for the return of the venire, and there is no other business to engage the immediate attention of the jury, the expense for the per diem fees of the jury must be met, without the giving of any equivalent whatever. If this expense can be saved by vacating the order, returning the names to the jury box, and drawing a new venire, we see no reason why it ought not be done. Other equally good reasons might present themselves. Of course, if

the order was vacated under circumstances that might be regarded as questionable, the situation might be different.

3. Error is assigned in the overruling of an objection interposed to the following question asked Dr. Turner, a witness upon the part of the state: "Supposing, Doctor, that both the decedent and the party firing the shot were in an erect position at the time of the firing of the first shot, which, in your opinion, was the first wound received by the deceased?" We need not, we think, go into a discussion of the question of whether or not the ruling of the court in this regard was error. Conceding, for the purposes of this case, that the question was not a proper subject for expert testimony, we do not perceive wherein it could have been prejudicial to the defendant's case. The decedent was shot twice, and defendant admitted firing both shots. The first shot he contended was fired in self-defense, and the second he testified was the result of an accidental discharge of his weapon. Dr. Turner, who was a witness to the shooting and subsequently performed an autopsy upon the deceased, described the course of the bullet from each shot. The wound resulting from either of the shots, he testified, was sufficient to produce death. Both of the shots fired being sufficient to produce death, it became immaterial which was the first. (*People* v. *Lemperle*, 94 Cal. 45, 29 Pac. 709; *People* v. *Hill*, 116 Cal. 568, 48 Pac. 711.)

4. Error is assigned in the giving of instruction No. 4 of the court's own motion. Concerning this assignment counsel in his brief says: "The court erred in giving his fourth instruction, because he says: 'It is only necessary that the act of unlawful killing be preceded by a concurrence of the will, deliberation, and premeditation on the part of the slayer.' This instruction omits the qualifying words, but should read: 'It is only necessary that the act of killing be preceded by and the result of a concurrence of will,' etc. This instruction was squarely passed upon by the Supreme Court of California in *People* v. *Maughs*, 149 Cal. 253, 86 Pac. 187, and held to be reversible error." Instruction No. 4 in question contains about seven hundred words and appears to have been drafted to cover the law of murder in the first degree. What the full instruction was, which was given in

*People* v. *Maughs*, *supra*, does not appear in that decision. Taking the instruction as a whole, we cannot see how the jury could have been misled by it, even if we might indulge in the presumption that the jury would resort to the minute analysis of language indulged in by the court in the Maughs case regarding the instruction there under consideration. Had defendant in this case been convicted of murder in the first degree, we would have gone into a more extended consideration of the point made, and its possible effect upon the minds of the jury. In the Maughs case the defendant was convicted of murder in the first degree; the defendant in this case, of murder in the second degree. For the crime for which the defendant was convicted, the instruction, in any event, could not have been prejudicial.

We think there is sufficient evidence to support the judgment, and, as the other assignments of error discussed are covered by the views already expressed, our opinion is that the judgment be affirmed.

It is so ordered.